State Board of Podiatry Examiners, Appellant,
*v.* Lerner.

Argued June 13, 1968. Before WRIGHT, P. J., WAT-KINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and HANNUM, JJ.

*Charles A. Woods, Jr.,* Deputy Attorney General, with him *Norman Ackerman,* Assistant Attorney General, and *William C. Sennett,* Attorney General, for State Board of Podiatry Examiners, appellant.

*Irving Warren Singer,* for appellee.

OPINION BY SPAULDING, J., September 12, 1968:

This is an appeal by the Pennsylvania State Board of Podiatry Examiners from an order of the Commonwealth Court directing the Board to accept the application of Sidney J. Lerner, appellee, for registration as a podiatrist. The matter came before the Commonwealth Court on appeal from an adjudication by the Board barring further practice of chiropody, now known as podiatry, by appellee without taking an examination and complying with all other provisions required by the Chiropody Act of 1956, March 2, P. L. 1206, as amended.

On August 27, 1936, after passing the required examination, appellee was licensed to practice chiropody in the Commonwealth by the Pennsylvania State Board of Medical Education and Licensure. Appellee actively practiced chiropody until September 1952 and was registered annually with the Board until that time.[1]

---

[1] Appellee was also licensed to practice in Florida and did so from 1936 to 1943. He returned to Philadelphia in 1943 and practiced there until 1952.

In 1953, he notified the Board that he was no longer engaged in the active practice of chiropody. In 1955, he executed and filed an affidavit of nonpractice which certified that he had not practiced chiropody in Pennsylvania from January 1, 1953 to December 31, 1954.[2]

Subsequently, the Legislature enacted the Chiropody Act of 1956.[3] Section 3 provides: "Any person who has heretofore been licensed to practice chiropody in this Commonwealth and who is so licensed on the date of the approval of this act and *who desires to continue* the practice of podiatry or chiropody must be *licensed* and *registered* under the provisions of this act, and, upon making application and payment of a fee of five dollars ($5.00), on or before the thirty-first day of December, one thousand nine hundred fifty-six, such person will be licensed under the provisions of this act *without being required to take the examination* provided by this act."[4] (Emphasis added.) Section 9 provides for the annual registration of chiropodists: "The board shall issue a license to practice chiropody to those qualified under the provision of this act. All original registrations shall expire on the first day of January next succeeding the issue thereof, and thereafter, each person so registered shall be required to register annually before the first day of January of each succeeding year. The form and method of such registration shall be provided for by the board in a manner enabling it to carry into effect the purposes of this act. Each person who registers shall pay for

---

[2] The affidavit provides: "The filing of an affidavit will exempt practitioners from paying annual registration fees for the years in which they did not practice in Pennsylvania."

[3] Act of March 2, 1956, P. L. 1206, 63 P.S. §42.1 et seq.

[4] The Act was re-enacted and amended by the Act of August 24, 1963, P. L. 1199, 63 P.S. §42.1 et seq. and is referred to as the "Podiatry Act of 1956."

each annual registration a fee of five dollars ($5), or the amount the department may determine . . . ."[5]

After a hearing before the State Board of Podiatry Examiners on June 26, 1963, the Board found that appellant was not licensed to practice chiropody or podiatry on December 31, 1956—the last date under the Act which persons previously licensed could register and be relicensed without taking an examination. In its adjudication of October 21, 1963, the Board concluded: "Sidney J. Lerner is not authorized to practice chiropody, now known as podiatry, and may not be licensed to so practice without taking the examination and complying with all other provisions required by the Chiropody Act of 1956 as amended." Lerner appealed.

On July 5, 1967, the Commonwealth Court sustained the appeal and directed the State Board of Podiatry ". . . to accept his application for registration and, *without examination,* issue to him a license to practice podiatry, upon payment of all accrued fees and penalties." (Emphasis added.) In so determining, Judge KREIDER stated for the court: ". . . Lerner was duly licensed by the Commonwealth in 1936—twenty-seven years before these proceedings began—and was never cited by the Board of violation of any law or regulation. To require him to take another examination after more than a quarter of a century had elapsed would impose a hardship upon him and other professional licensees which we do not believe the Legislature intended." In a concurring and dissenting opinion, Judge BOWMAN took issue with what he considered to be the "ultimate impact of the majority opinion" that "an individual having once been issued a license to practice a profession thereby acquires an ab-

---

[5] 63 P.S. §42.9. Biennial registration, accompanied by a fee of $10., was substituted by the Act of August 8, 1961, P. L. 982, §1, 63 P.S. §42.9.

solute right for life to have it reissued or renewed subject only to its revocation or suspension for good cause shown and by procedural due process."[6] He stated in his concurring opinion: "The reason assigned by the Board and the statutory authority cited to support its action bear no reasonable relation to a proper exercise of the police power in denying an individual licensed to practice a profession the right to continue such practice. Within the context of the 'grandfather' clause here in question and the biennial registration requirements of the Chiropody Act of 1956, as amended, no discernible relationship to an exercise of the police power in ascertaining competency of one already licensed can be found. Therefore, they afford no authority for the Board's action."

It is well established that each state may regulate entry requirements in professions which affect the public interest. *Dent v. West Virginia,* 129 U.S. 114 (1889).[7] All states have enacted medical licensure statutes designed to protect the public against incompetence, quackery and unscientific principles in the practice of medicine.[8] It is equally well established that the state may not infringe upon the liberty of an individual, under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the state to effect. *Meyer v. Nebraska,* 262 U.S. 390, 399-400 (1923).

---

[6] Opinion and Order of the Court of Common Pleas of Dauphin County entered July 5, 1967 at No. 648 Commonwealth Docket, 1963.

[7] Although the Court in *Dent* concluded that the State of West Virginia was within the scope of its police power in prohibiting the appellant physician from continuing the practice of medicine until he complied with the requirements of the state statute, the case is not controlling here since Dent had never been licensed.

[8] See Forgotson et al., "Licensure of Physicians", 1967 Washington University Law Quarterly 249 (1967).

The Board contends that the appellee cannot qualify for a license without examination because he failed to register by December 31, 1956, and that a denial of a license for this reason is a reasonable exercise of the State's police power. This question is one of first impression in Pennsylvania, for, as the court below carefully noted, none of the cases cited by appellant involved an applicant who possessed a license previously issued to him by the Commonwealth of Pennsylvania. *In Re Registration of Campbell,* 197 Pa. 581 (1901), involved the removal of the applicant's name from the medical register in the prothonotary's office because the registration was based upon a false representation that he had a license. In *Commonwealth v. Densten,* 217 Pa. 423 (1907), and *Application of Samuel Wadel for Registration as a Veterinary Surgeon,* 25 Pa. C.C. 60 (1901), the applicants were unlicensed and attempted to exercise their right under a "grandfather clause" in the statute long after the permissible period had passed.[9]

Courts in other jurisdictions have not been in agreement as to whether the state's police power is properly exercised by a statutory provision preventing a previously licensed practitioner from obtaining a renewal of a license to practice without examination if the practitioner fails to renew the license within the prescribed period. In *State v. Otterholt,* 234 Iowa 1286, 15 N.W. 2d 529 (1944), the Iowa Supreme Court held that a chiropractor whose annual license had expired and had not been renewed was entitled, as a matter of right, to have his license renewed and that the privilege to practice granted by the license could be terminated only upon a showing that the licensee had failed to adhere to the professional standards estab-

---

[9] For a comprehensive review of "grandfather clauses", see 4 A.L.R. 2d 670.

lished by the licensure statute.[10]  In contrast to *Otter-holt* is *Fischwenger v. York,* 154 Fla. 450, 18 S. 2d 8 (1944), where the appellant dentist, duly licensed in 1925 after passing the required examination, abandoned his practice and made no attempt to secure an annual renewal license until 1943.  In 1941 a new statute was enacted regulating the practice of dentistry and repealing all laws in conflict with it.  It contained a section which provided that any license previously granted would automatically be cancelled if the holder failed to secure a renewal certificate within three months after the thirtieth day of September of each year.  The Supreme Court of Florida, without discussing the relation between the licensing provision and the competency of the practitioner seeking renewal, held that the statute was a valid exercise of the state's police power.

Although divergent in result, both the *Otterholt* and *Fischwenger* cases are in agreement that the validity of the renewal provisions rests upon a finding that the restrictions are reasonable and bear some just relation to the matter sought to be regulated.  This question is before us in the instant case.

The Commonwealth has an interest in assuring that the competence of its professionals as established by licensure examinations is maintained.  The Podiatry Act of 1956 reflects this interest by requiring that licensed practitioners meet a minimum standard of continuing professional education.  Section 9a of the Act,

---

[10] *Otterholt* involved a proceeding to revoke a license on the ground of violations of substantive provisions of the Iowa licensing act.  The validity of annual renewal licensing provisions became determinative because the defense rested on the ground that since the license had expired and had not been renewed, the proceedings to revoke were thus moot.  Unlike *Fischwenger* and the instant case, *Otterholt* involved annual renewal requirements rather than a "grandfather clause."

63 P.S. §42.9a, provides that no applicant for renewal registration shall be granted a registration unless the applicant submits evidence that he has attended not less than sixteen hours of approved educational conferences during the two preceding license years.[11] This evidence of attendance at approved educational conferences in the *only* indicia of continued competence which must be shown to obtain a license renewal. The power of the Commonwealth to require re-examination of previously licensed persons who have not been actively practicing their profession is not before us in this case. The Podiatry Act, unlike the Real Estate Brokers License Act[12] and the Barber Law,[13] does not provide for re-examination after a period of inactivity. Section 3 of the Podiatry Act of 1956 bears no discernible relationship to the maintaining of competence. It was described by the court below as "a revenue raising measure, since the current application form used in an 'Application for Renewal of Registration as Podiatrist', of which we take judicial notice, requires the applicant to do nothing more than insert therein his certificate number, sign his name, note change of name or address and enclose a check for the registration fee."

There is no evidence that the appellee has ever committed any offense which would provide grounds for revocation of his license. Regardless of his competency or failure to engage actively in the practice of podiatry, he would have been entitled to a renewal of his license without examination had he complied with the time provision of §3. The time period for renewal provided in §3 thus bears no reasonable relation to the competency of the licensee, and it is competence

---

[11] This provision did not form the basis of the Board's refusal to renew appellee's license and compliance is not in issue here.

[12] Act of 1957, July 9, P. L. 608, 63 P.S. 436 (Supp.).

[13] Act of 1961, July 19, P. L. 796, 63 P.S. 558 (Supp.).

of licensed practitioners which provides the subject matter for the exercise of the police power of the Commonwealth. If the state is to regulate, due process requires that it have a rational purpose and bear some reasonable relationship to the matter to be regulated. This condition is not satisfied here. While the State Board of Podiatry Examiners may prevent the appellee from engaging in the practice of podiatry until his license has been renewed, it cannot deny him the right to renew his license without examination for failure to comply with §3 of the Podiatry Act.

The appellee also argues that the action of the Board of Podiatry Examiners was a denial of due process in that §3 of the Podiatry Act contains no provision requiring that persons previously licensed must receive notice that the application for renewal must be made to the Board prior to December 31, 1956, and in that he received no actual notice of this requirement. In light of our holding that the time restriction placed on renewal applications bears no reasonable relationship to a proper exercise of the police power, it is not necessary to reach this issue.

Decision affirmed.