Bud Edward Quintana, D.O., Petitioner *v.* Commonwealth of Pennsylvania, State Board of Osteopathic Medical Examiners, Respondent.

Argued May 11, 1983 before President Judge CRUMLISH, JR., and Judges WILLIAMS, JR., and BARBIERI, sitting as a panel of three.

*Thomas A. Beckley,* with him, *Jeffrey W. Davis, Backley & Madden,* for petitioner.

*Mary S. Wyatte,* Counsel, State Board of Osteopathic Medical Examiners, with her, *Edward D. Frank, II,* Chief Counsel, Bureau of Professional and Occupational Affairs, and *David F. Phifer,* Chief Counsel, Department of State, for respondent.

OPINION BY JUDGE BARBIEBI, October 11, 1983:

The petitioner, Bud Edward Quintana, appeals from a decision of the State Board of Osteopathic Medical Examiners (Board) which revoked his license to practice osteopathic medicine and surgery in the State of Pennsylvania. We affirm.

On July 9, 1981, the State Board of Osteopathic Medical Examiners held a hearing to determine whether or not the petitioner in this case had violated Section 15(a)(2) and 15(a)(4) of the Osteopathic Med-

ical Practice Act (Act), Act of October 5, 1978, P.L. 1109, 63 P.S. §§271.15(a)(2) and 271.15(a)(4). Sections 15(a)(2) and (a)(4) of the Act provide that:

(a) The board shall have authority to refuse, revoke or suspend the license of a physician for any of the following reasons:

. . . .

(2) Making misleading, deceptive, untrue, or fraudulent representations in the practice of osteopathic medicine and surgery, practicing fraud or deceit in obtaining a license to practice osteopathic medicine and surgery, or making a false or deceptive biennial registration with the board.

. . . .

(4) Having a license to practice osteopathic medicine and surgery revoked or suspended or having other disciplinary action taken, or an application for a license refused, revoked, or suspended by the proper licensing authority of another state, territory, or country.

The charges brought against the petitioner were based upon disciplinary action taken by the Michigan Board of Osteopathic Medicine and Surgery which in 1980, placed the petitioner on probation for three years. The Michigan state action was prompted by a complaint filed by the Attorney General's office of that state charging the petitioner with subterfuge and use of another's name to obtain and possess controlled substances without lawful authority, and prescribing and administering drugs for other than lawful diagnostic and therapeutic purposes. Specifically, the petitioner had prescribed the drug Methaqualonne for his fiancee and an out-of-state physician in order to obtain all or a part of the drug for his personal use.

At the Board's hearing on July 9, 1981, the petitioner's testimony established that he was in fact guilty as charged by the Michigan State Board and that on many occasions he had prescribed medication for individuals without first examining them or without establishing whether the drugs prescribed were medically indicated. Consequently, the Board revoked the petitioner's license to practice in Pennsylvania stating in part that the Michigan sanction was too lenient, and that the petitioner had demonstrated a disregard for his responsibility to maintain high standards of integrity and professionalism in practice. The petitioner now appeals to this Court.

The petitioner first contends that the Board abused its discretion by revoking his license in this case. We have carefully reviewed the record in this case and are convinced that the Board did not abuse its discretion. The Board was obviously convinced that the petitioner had exhibited a high disregard for the responsibilities of a doctor and was therefore unfit to practice in Pennsylvania based upon the petitioner's mishandling of a controlled substance known for its high abuse, and the petitioner's lack of any plausible explanation for his actions. Furthermore, we do not find the gravity of petitioner's actions in this case to be distinguishable from other cases where licenses have been revoked based upon the fraudulent writing of prescriptions to obtain controlled substance. *See Giacco v. State Dental Council & Examining Board,* 60 Pa. Commonwealth Ct. 408, 431 A.2d 1147 (1981) (where a dentist's license was revoked for writing "quaalude" prescriptions for fictitious patients to support his fiancee's habit), and *Derrick v. Department of State, Bureau of Professional & Occupational Affairs,* 60 Pa. Commonwealth Ct. 543, 432 A.2d 282 (1981) (where a nurse's license was revoked based upon his writing fictitious prescrip-

tions to obtain a controlled substance for his personal use).

The petitioner next contends that his actions do not constitute sufficient fraud or deceit to establish violations under Section 15(a)(2) of the Act. The petitioner argues that no findings were made to establish that he acted to anyone's detriment and further that, at best, he was guilty of only telling half-truths. We find this argument to be wholly without merit. The petitioner's actions in this case clearly constitute "misleading, deceptive, untrue, or fraudulent" representations within the intendment of Section 15(a)(2). It is unreasonable to assume that someone must first be harmed before a violation of the Act can be found. This Court has consistently held that fraud in practice in the health care field is not limited to actions which affect the care of patients, but encompasses all aspects of professional conduct. *Giacco; Catena v. State Board of Medical Education & Licensure*, 49 Pa. Commonwealth Ct. 542, 411 A.2d 869 (1980); *State Dental Council and Examining Board v. Friedman*, 27 Pa. Commonwealth Ct. 546, 367 A.2d 363 (1976).

Similarly, we must also dismiss the petitioner's contention that Section 15(a)(4) of the Act violates the Due Process clause of the United States Constitution upon the basis that it creates an irrebuttable presumption to the effect that an out-of-state proceeding renders a physician unfit to practice in Pennsylvania. While Section 15(a)(4) authorizes the Board to refuse, revoke or suspend a practitioner's license based upon an out-of-state proceeding, this action must be taken pursuant to Section 15(d) of the Act, 63 P.S. §271.17(d), which provides that any action taken by the Board must be taken subject to, *inter alia*, the rights of notice and hearing. In the present case, the petitioner was afforded a full hearing whereby he had

the opportunity to present his case to the Board and establish why the Michigan state proceeding should not affect his license in Pennsylvania. The Board, however, was obviously not persuaded by the petitioner's arguments and consequently revoked his license based upon their own findings of fact and conclusions of law. Accordingly, no presumption was employed to revoke the petitioner's license.

Finally, the petitioner argues that the Board's action in this case violates his right under Article 1 Section 1 of the Pennsylvania Constitution[1] to pursue his chosen profession. While the petitioner acknowledges that the state, through its police power, may constitutionally impose restrictions upon occupations to protect the general public from those who are incompetent or unqualified to engage in practice, *Reisinger v. State Board of Medical Education & Licensure,* 41 Pa. Commonwealth Ct. 553, 399 A.2d 1160 (1979); *see also Johnston v. State Board of Medical Education & Licensure,* 49 Pa. Commonwealth Ct. 9, 410 A.2d 103 (1980); *State Board of Podiatry Examiners v. Lerner,* 213 Pa. Superior Ct. 63, 245 A.2d 669 (1968); *Howarth v. Gilman,* 164 Pa. Superior Ct. 454, 65 A.2d 691 (1949), *aff.* 365 Pa. 50, 73 A.2d 655 (1950), the petitioner argues that in this case the Board's actions do not bear a sufficiently substantial relation to its objective of protecting the public interest. In support of this contention the petitioner contends that he was never found unfit to practice his profession. We disagree. While the Board found that the petitioner

---

[1] Article 1 Section 1 of the Pennsylvania Constitution provides: All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

never exhibited an addiction to a controlled substance and was able to practice without risk to his patients, it is still clear that the Board had some very serious reservations about the petitioner's integrity and professionalism in light of his admitted wrongdoings. Without repeating why the Board was justified in revoking the petitioner's license, we would like to note that a physician who prescribes controlled substances to patients without first examining them or determining whether a prescribed drug is medically indicated, does pose a very serious risk to his patients.

For the foregoing reasons, the decision of the Board revoking the petitioner's license is hereby affirmed.

### Order

And Now, this 11th day of October, 1983, the decision of the State Board of Osteopathic Medical Examiners, dated January 14, 1982, revoking the license of the Petitioner, Bud Edward Quintana, is hereby affirmed.