Steven S. COHEN, M.D., Petitioner,

v.

**STATE BOARD OF MEDICINE,**
Respondent.

Steven S. COHEN, M.D., Petitioner,

v.

**STATE BOARD OF MEDICINE,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued April 15, 1996.
Decided May 22, 1996.

John G. DiLeonardo, for Petitioner.

April L. McClaine, for Respondent.

Before PELLEGRINI and FLAHERTY, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Steven S. Cohen, M.D. (Cohen) petitions for review of two (2) adjudications and orders of the State Board of Medicine (Board) which resulted in the revocation of Cohen's license to practice medicine. The March 28, 1995 order of the Board sustained the temporary suspension of Cohen's medical license. Cohen's appeal of this order is at 1024 C.D. 1995. The August 22, 1995 order of the Board revoked Cohen's medical license. Cohen's appeal of this order is at 2393 C.D. 1995.[1]

The facts proceeding this medical license revocation are as follows. On November 14, 1994, the Probable Cause Screening Committee of the State Board of Medicine issued an order suspending Cohen's license to practice medicine under Section 40(a) of the Medical Practice Act of 1985.[2] On May 12, 1995, following a formal hearing,[3] the hearing examiner in the Bureau of Professional and Occupational Affairs (Bureau) issued an order which sustained the suspension of the license to practice medicine of Cohen for five (5) years, effective November 14, 1994. Of this five year period, only the first 180 days of the suspension was to be served with the remainder being stayed in favor of probation providing that, *inter alia*, Cohen abstain from the use of drugs and submit to urine screens. The Bureau filed an application for review to the Board on the basis that the hearing examiner issued an inadequate disciplinary measure.

Without taking additional evidence, the Board adopted many of the findings of the hearing examiner as its own, and also made additional findings from the evidence of record. The specific findings of the Board, pertinent to this appeal, are as follows. Cohen holds a license to practice medicine and surgery in the Commonwealth at No. MD–039991–L. Cohen has maintained an office for the general practice of medicine in Mercersburg since July of 1990. Cohen maintains a hectic schedule and sees forty to fifty patients a day. He routinely examines patients but does not complete patient medical charts until a later time. On October 28, 1993, Donald Meadows (Meadows) visited Cohen's office for the first time. At that time, Meadows was addicted to Dilaudid.[4] Cohen examined Meadows, found track marks on his arm, told Meadows he would not prescribe Dilaudid, 4 mg. because local pharmacies "had been calling and complaining" but gave Meadows prescriptions dated October 28, 1993 for Xanax and Dilaudid, 2 mg. which he told Meadows to have filled in Chambersburg. Cohen's medical chart shows an examination entry on October 29, 1993, and no entry for October 28, 1993.

On that same date, October 28, 1993, Willard Stacy (Stacy) visited Cohen's office and insisted on obtaining prescriptions for drugs for himself and his family members. Stacy is an admitted addict. On October 28, 1993, Cohen issued prescriptions for Stacy, Stacy's wife, and daughter. Cohen's medical records show an examination date for both Stacy's wife and daughter. On that date, Stacy's wife visited Cohen's office but was not examined, and the daughter did not visit the office on October 28, 1993. Prescriptions for Dilaudid were issued by Cohen for both Stacy and his son the following day, October 29, 1993. At that time, October 29, 1993, Stacy's son was incarcerated in a federal facility in Morgantown, West Virginia. Stacy and Meadows were both arrested on October 29, 1993 when they attempted to have their prescriptions filled in Newville.

The Board also found that Tina Cline (Cline) was a patient of Cohen's from July 7,

---

1. The issues raised in both of Cohen's appeals are identical.

2. Act of December 20, 1985, P.L. 457, *as amended*, 63 P.S. § 422.40(a).

3. Following a preliminary hearing, the hearing examiner sustained the temporary suspension for the remainder of a 180 day period following the hearing. Thereafter, Cohen filed an application for review of the decision which was denied by the Board on March 28, 1995.

4. Dilaudid (hydromorphone hydrochloride) is a semi-synthetic narcotic analgesic of the opiate type listed as a Schedule II controlled substance with the highest potential for psychologic and physical addiction. N.T. 362, 378.

1990 until February 3, 1994. On August 29, 1990, Cline underwent a total abdominal hysterectomy by surgeons at Fulton County Medical Center. Thereafter, on October 19, 1990, Cohen diagnosed Cline as having severe painful dysmenorrhea[5] and adenomyosis[6] and prescribed Demerol. Cohen treated Cline 39 times between October 1990 and December 1991 and prescribed eight different controlled substances. On December 13, 1991, Cline fell at work and suffered an alleged back injury. In the 25 months following the fall, Cohen treated Cline 235 times and prescribed numerous controlled substances.

On February 4, 1994, Cline ingested approximately 23 Esgic tablets which had been prescribed by Cohen the previous day. Cline was treated and transferred to St. Joseph's Hospital where she underwent a 6 day detoxification program and was treated for chemical dependency on an intensive outpatient basis. Cohen's medical chart for Cline was replete with "cross-outs", "write-overs", and "inconsistencies". See Exhibit C–8.

On the basis of these findings, the Board concluded that Cohen's prescription of controlled substances to Meadows and Stacy constituted unprofessional conduct involving the provision of a medical service at a level beneath the accepted standard of care, involved the prescription of a controlled substance in a way other than for an acceptable medical purpose, and exhibited a reckless indifference to the interests of the patient. Regarding Cline, the Board concluded that Cohen's course of medical treatment of Cline constituted unprofessional conduct involving 1) the provision of medical services at a level beneath the accepted standard of care, and 2) negligence on repeated occasions. The Board then concluded Cohen was subject to disciplinary measures and ordered, on August 22, 1995, that his license to practice medicine be revoked.

◼ On appeal of the revocation of his license by the Board, Cohen presents several issues for our consideration.[7] First, Cohen inartistically questions whether substantial evidence exists to support the Board's revocation of his medical license.[8] Second, he asserts an issue of prosecutorial misconduct by the prosecuting attorneys. Third, he argues the prosecution is barred by operation of the doctrine of laches. Fourth, and finally, he contends his due process rights were violated.[9]

◼ In addressing the issue of substantial evidence, we initially note that factual findings of the Board necessary to the ultimate determination must be supported by substantial evidence. 2 Pa.C.S. § 704. Substantial evidence is defined as such relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Wittco Fashions v. Workmen's Compensation Appeal Board (O'Neil)*, 118 Pa.Cmwlth. 126, 544 A.2d 559 (1988). The Board is the ultimate fact finder and may accept or reject the testimony of any witness in whole or in part. *Barran v. State Board of Medicine*, 670 A.2d 765 (Pa.Cmwlth.1996); *Atkins v. Workmen's Compensation Appeal Board (Geo–Con, Inc.)*, 651 A.2d 694 (Pa.Cmwlth. 1994); *Cassella v. State Board of Medicine*, 119 Pa.Cmwlth. 394, 547 A.2d 506 (1988), *petition for allowance of appeal denied*, 522 Pa. 585, 559 A.2d 528 (1989). Further, on prior occasion, we have recognized the particular expertise of the Board related to medical matters. *Barran; Kundrat v. State*

5. Difficult menstrual periods.

6. Ectopic occurrence.

7. In considering the propriety of a medical license revocation by the Board, our standard of review is limited to a determination of whether the adjudication is in violation of constitutional rights, is in accord with agency procedure, is in accordance with law, or any necessary finding of fact is supported by substantial evidence. *Slawek v. State Board of Medical Education and Licensure*, 526 Pa. 316, 586 A.2d 362 (1991).

8. In his Questions Presented section, Cohen asks "Whether the Board abused its discretion in sustaining all or a poriton (sic) of the factual allegations framing the charges lodged against Petitioner". We will treat this issue as one of substantial evidence.

9. Cohen also argues in his brief that the statute is unconstitutional. However, this issue was not raised in the Petition for Review and will not be addressed for the first time on appeal. See *Pierce v. Pennsylvania Board of Probation and Parole*, 46 Pa.Cmwlth. 507, 406 A.2d 1186, n. 1 (1979).

*Dental Council and Examining Board,* 67 Pa.Cmwlth. 341, 447 A.2d 355 (1982).

■ Herein, the findings of the Board were based upon the testimony of Stacy and Meadows, together with the prescriptions themselves, and review of Cohen's medical charts for these individuals. Our review reveals that the record in this case contains substantial competent evidence to support the decision of the Board to revoke the license to practice medicine of Cohen. The testimony and the medical charts indicate that Cohen prescribed controlled substances on numerous instances without having examined the patients for which the drugs were prescribed. This occurred with regard to Stacy, his wife, daughter and son. As we have stated on prior occasion:

> Without repeating why the Board was justified in revoking the petitioner's license, we would like to note that a physician that prescribes controlled substances to patients without first examining them or determining whether a prescribed drug is medically indicated, does pose a very serious risk to his patients.

*Quintana v. State Board of Osteopathic Medical Examiners,* 77 Pa.Cmwlth. 438, 466 A.2d 250 (1983). The same rationale is applicable here.

■ Regarding the issue of prosecutorial misconduct alleged by Cohen, we first point out that the term "prosecutorial misconduct" is a concept associated with criminal cases. A defendant in a criminal matter is entitled to relief for a claim of prosecutorial misconduct only when the unavoidable effect of the prosecutor's comments or actions prejudices the jury so that a true verdict cannot be rendered because the existence of bias or hostility renders it is impossible to neutrally weigh the evidence. *Commonwealth v. Baker,* 531 Pa. 541, 614 A.2d 663 (1992). The instant matter is civil in context, involving an administrative agency appeal from a license revocation. As such, criminal concepts are inapplicable to the matter at hand.

■ Next, Cohen asserts that his case should be dismissed because the doctrine of laches applies. Laches will bar a claim where want of due diligence or unjustified delay results in prejudice. *Weinberg v. State Board of Examiners of Public Accountants,* 509 Pa. 143, 501 A.2d 239 (1985). The record is devoid of any lack of due diligence or unjustified delay relating to the proceeding against Cohen.[10] As no prejudice was established by Cohen, this argument has no merit.

■ Finally, as to the issue of lack of due process, we also find no merit to Cohen's assertion that because the issue of witness credibility was not considered at the preliminary hearing stage, he was deprived of a meaningful hearing. As already indicated, the Board is the ultimate fact finder and has exclusive province over assessing the credibility of witnesses. *Barran.* Witness credibility is not an issue at the preliminary hearing stage of a medical licensure proceeding. *Shah v. State Board of Medicine,* 139 Pa. Cmwlth. 94, 589 A.2d 783 (1991), *petition for allowance of appeal denied,* 528 Pa. 646, 600 A.2d 197 (1991).

Accordingly, we affirm.

### ORDER

AND NOW, this 22nd day of May, 1996, the March 28, 1995 and August 22, 1995 orders of the State Board of Medicine are affirmed.

---

10. To the contrary, the record reveals acts of misconduct by Cohen occurred October 28–29, 1993 as to Willard and Stacy, a Petition for Immediate Temporary Suspension was filed November 14, 1994, a formal hearing commenced February 27, 1995 before a Board hearing examiner who issued an adjudication and order on May 12, 1995, an appeal was filed June 1, 1995, and the Board issued revocation of Cohen's license on August 22, 1995. It stretches credulity to assert that the conducting of investigation, charging and prosecution within this brief period of time constitutes undue diligence or delay.