Stephen D. Moses, D.D.S., Petitioner *v.* Commonwealth of Pennsylvania, State Dental Council and Examining Board, Bureau of Professional and Occupational Affairs, Department of State, Respondent.

Argued February 9, 1979, before Judges ROGERS, BLATT and DiSALLE, sitting as a panel of three.

*David E. Lehman,* with him *McNees, Wallace & Nurick,* for petitioner.

*James P. Deeley,* Assistant Attorney General, with him *Gerald Gornish,* Acting Attorney General, for respondent.

Per Curiam Opinion, April 19, 1979:

We have before us an appeal from the order of the State Dental Council and Examining Board (Board) suspending for six months the license of Dr. Stephen D. Moses (Appellant) to practice dentistry.

The charges against Appellant arise out of services he claims to have performed on ten of his patients, each of whom was insured under the Sharon Steel Corporation Group Dental Plan. Appellant submitted claims for payment of those services to the Prudential Insurance Company (Prudential), the insurance carrier for the group plan. Prudential's consultant, Dr. Carl Flecker, reviewed the claims and examined each of the ten patients, and issued an unfavorable report. After receiving the report, the Board, on February 25, 1977, charged Appellant with submitting 68 false and fraudulent claims in violation of Section 3(i) of The Dental Law (Act), Act of May 1, 1933, P.L. 216, *as amended*, 63 P.S. §122(i).

Hearings were held on June 15 and 16, 1977. Appellant requested that the Board subpoena his patients and order them to submit to a physical examination by Appellant and his expert witnesses. The Board refused. However, the Board kept the record open, allowing Appellant a further opportunity to physically examine each of his patients. When only one patient agreed to submit to an examination, the Board, by order of September 28, 1977, appointed three impartial experts to examine the patients, with Appellant present. The Board withdrew its order, however, after Appellant objected to it on the grounds that it improperly involved the Board in a prosecutorial function and that the passage of time, causing as it does the deterioration of structures, made it too difficult to determine the condition of a patient's mouth some two years earlier.

On January 18, 1978, the Board ordered the six-month suspension of Appellant's license to practice dentistry.

Appellant, in his petition for review, raises essentially two arguments. One goes to whether the record contains substantial evidence of a violation of the Act and the other to whether the Board afforded Appellant due process of law.

At the outset, we disagree with Appellant's contention that the Board must find evidence of each of the common law elements of fraud, *i.e.*, misrepresentation, materiality, scienter, reliance and damages. Section 3(i) of the Act makes unlawful "fraudulent or unlawful practices, or fraudulent, *misleading or deceptive representations.*" (Emphasis added.) Consequently, the argument by Appellant that Prudential did not rely on his misrepresentations to its injury is misplaced.

Turning to the substantial evidence issue, we note that of the 68 counts in the citation issued by the Board, 33 allege that Appellant overstated the number of tooth surfaces involved in the tooth restorations (or "fillings") for which he claimed compensation. For purposes of this discussion, Appellant asks us to visualize a tooth as a three-dimensional box, having four side surfaces and one top surface. When dentist restores (fills) a tooth, the size and location of the decay will determine the number of surfaces affected by the restoration. On the Prudential claim form, Appellant would identify, by number, each tooth he restored and the tooth surfaces involved.

Dr. Flecker, the Commonwealth's only expert witness, examined each of the 33 teeth in question and testified that in many instances, the restorations involved fewer surfaces than the number claimed by Appellant. Dr. DeSantis, one of Appellant's witnesses, testified that as to the four restorations which

he viewed, each involved exactly as many surfaces as Appellant claimed. Other dentists testified that surface involvement is a question of interpretation, requiring the judgment and discretion of the particular dentist performing the work. Even Dr. Flecker conceded that the surfaces disallowed by him were incidentally involved, but that the involvement was not so substantial as to justify additional compensation.

The Board accepted Dr. Flecker's testimony as to the number of surfaces involved, and given his clear and unequivocal statement, we cannot hold that there exists no substantial evidence to support the Board's findings that Appellant overstated the number of surfaces. It is clear to us, however, that the Act requires some knowledge or intent on the part of the licensee, and since counting tooth surfaces obviously involves judgment, we are not prepared to say as a matter of law that, accepting Dr. Flecker's testimony instead of Appellant's, it necessarily follows that Appellant knowingly or wilfully overstated the number of surfaces affected.

We agree with the Board that "[t]he evidence presented on the issue of the number [of] surfaces involved in each restoration, taken alone, is not overwhelming proof of any wrongdoing by the Respondent. However, when viewed in light of all the other evidence presented, the picture painted is much more serious than the simple situation in which a dentist interprets questionable instances in his own favor." We find substantial evidence of other violations of the Act which would justify a license suspension.

The Board, in its citation, alleged that Appellant filed claims for a number of services, including both tooth restorations, occlusal adjustments and periodontal scaling and root planing, which he did not perform. There is substantial evidence in the record to support the Board's findings that Appellant failed to

perform much of the work for which he sought compensation. Given the expert testimony of Dr. Flecker, as well as the testimony of several of Appellant's patients, we cannot reverse the Board's determination.

The Board also found it unlikely that Appellant performed certain claimed procedures in the sequence and time stated. For example, Appellant claimed to have performed on one patient a full-mouth gingival curretage, followed by a four surface restoration. Since the first procedure opens the gums and causes bleeding and the second procedure creates debris which would enter the exposed gums, the Board found the situation as described to be "impossible." Given the Board's particular expertise in these matters, and the fact that each member is a licensed dentist, we will defer to its judgment, especially where, as here, we find substantial evidence to support it.

Appellant next argues that he was denied due process in several ways. He first points to various discrepancies between some of the counts in the citation and the Board's findings of fact pertaining to those counts, arguing that the findings raise issues never mentioned in the citation. For example, the Board made the following findings of fact with regard to work performed on patient, D.A.B., on April 26, 1976:

42. Respondent claims to have done the following procedures on patient [D.A.B.] on April 26, 1976 in the space of two hours and fifteen minutes and in the following order:
a. full mouth adult prophylaxis
b. full mouth periodic oral examination
c. full mouth gingival curretage
d. full mouth periodontal scaling and root planing

e. full mouth complete occlusal adjustment

f. pulp vitality tests on posterior teeth

g. restoration of fractured tooth number 19DOFL

h. treatment for relief of dental pain from erupting tooth number 18 and tooth number 31

i. full mouth topical application of fluoride phosphate treatment

43. It is unlikely that the procedures described in Finding of Fact Number 42 could be performed in the amount of time stated by the Respondent and in the sequence stated by the Respondent and under the conditions of the Respondent's practice as described by him.

The only counts in the citation dealing with services rendered on April 26, 1976 are the following:

16. On patient [D.A.B.], Respondent submitted a claim for services rendered April 26, 1976, said claim being for gingival curretage when in fact this procedure was not done.

17. On patient [D.A.B.], Respondent submitted a claim for services rendered April 26, 1976, said claim being for periodontal scaling and root planing of the entire mouth when in fact this procedure was not done.

18. On patient [D.A.B.], Respondent submitted a claim for services rendered April 26, 1976, said claim being for occlusal adjustment, complete chrome, when in fact this procedure was not done.

19. On patient [D.A.B.], Respondent submitted a claim for services performed April 26, 1976, said claim being for pulp vitality tests, when in fact this procedure was not done.

20. On patient ·[D.A.B.], Respondent submitted a claim for services rendered April 26, 1976, said claim being for recalsification [sic], temporary restoration per tooth, for tooth number 19 DOFL when a claim for amalgam restoration for this tooth was made in September of 1975.

Appellant cites *In the Matter of James L. Rosenbaum,* 478 Pa. 93, 385 A.2d 1329 (1978), for the proposition that it was improper for the Board to make findings with regard to the four procedures (a, b, h and i) which were not mentioned in the citation, because Appellant had no notice that he would be charged with failing to perform those four procedures. We disagree. It is clear to us that the allegations in the citation put Appellant on sufficient notice of the charges against him. He was warned to be prepared to justify his claims for services performed on D.A.B. on April 26, 1976. To say that he believed that only five of those claims would be disputed rather than nine, is ludicrous. Furthermore, we note that the Board did not find that Appellant failed to perform *each* of the nine procedures; it simply found that he did not perform *all* of them.

Appellant argues that nothing in the citation put him on notice that the time within which services were performed would be an issue, and that had he been given such notice he could have shown at the hearing that he is a very efficient worker, capable of performing prodigious feats of dentistry within a limited time period. We are unpersuaded. Appellant testified that he works alone, without either a dental assistant or secretary. Furthermore, he stated that he fills out a patient's chart as he works on that patient. The Board found it difficult to believe that Appellant, working alone, and making the intricate and lengthy notations that appear on each chart, could have per-

formed all the procedures for which he claimed compensation, and we have no reason to set this finding aside.

Appellant's next due process argument goes to his inability to physically examine each patient in order to adequately prepare for the hearing and properly cross-examine Dr. Flecker. Starting with the Board's refusal to subpoena Appellant's patients, we know of no authority, and Appellant cites none, for the proposition that the Board has the power to compel non-parties to submit to a physical examination. The Board's refusal was proper.

Similarly, the Board properly denied Appellant the right to physically examine his patients at the hearing itself, even though the scope of Appellant's cross-examination of Dr. Flecker was limited thereby. In light of Appellant's admission that the conditions in the hearing room were not at all conducive to a proper examination of the patients, we find no impropriety.

Our conclusion that the Board did not wrongfully deny Appellant access to physical evidence is supported by the fact that, after the hearing, it attempted to convene a panel of impartial experts to examine each patient, with Appellant present. By objecting to that procedure, Appellant cannot now argue that he was treated unfairly.

Appellant argues lastly that the Board violated his due process rights by allowing its former counsel to serve as prosecutor. We have no problem with an individual acting as counsel to the Board in one case and then as prosecutor in a wholly unrelated case. *State Dental Council and Examining Board v. Pollock*, 457 Pa. 264, 318 A.2d 910 (1974); *Miller v. State Dental Council and Examining Board,* Pa. Commonwealth Ct. , 396 A.2d 83 (1979).

We affirm.

ORDER

AND Now, this 19th day of April, 1979, the order of the State Dental Council and Examining Board, dated January 18, 1978, suspending for six months the license of Stephen D. Moses, is hereby affirmed.