**Peter D. BARRAN, M.D., Petitioner,**

v.

**STATE BOARD OF MEDICINE,
Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 13, 1995.

Decided Jan. 25, 1996.

Joseph A. Bubba, for Petitioner.

April L. McClaine, for Respondent.

Before COLINS, President Judge, SMITH, Judge, and KELTON, Senior Judge.

SMITH, Judge.

Peter Barran seeks review of the May 23, 1995 order of the State Board of Medicine (Board) denying Barran a graduate medical license under provisions of the Medical Practice Act of 1985 (MPA), Act of December 20, 1985, P.L. 457, *as amended,* 63 P.S. §§ 422.1–422.45. Barran questions, inter alia, whether the Board's denial must be based upon one or more of the five specifically stated deficiencies set forth in Section 41(5) of the MPA, 63 P.S. § 422.41(5), and

whether the Board erred in refusing to issue a medical license to Barran under Section 41(4), 63 P.S. § 422.41(4), on the sole basis of the suspension of Barran's medical license by the state of Massachusetts.[1]

Barran applied to the State Board of Medicine for a graduate medical license in May 1994. In Barran's application, he noted that his license to practice medicine in Massachusetts had been indefinitely suspended on October 5, 1988 due to mental instability related to the killing of his housemate on October 6, 1986. The Massachusetts Board of Registration had temporarily suspended Barran's license three weeks after Barran committed the crime. While under the influence of alcohol and drugs, Barran killed his housemate by bludgeoning him in the face, head and neck with a claw hammer. He pleaded guilty on December 1, 1988 to voluntary manslaughter and was sentenced to serve twelve to twenty years' imprisonment. Barran was incarcerated in a state mental institution and several prisons in Massachusetts from October 1986 through November 1992. Upon his release from prison, Barran was placed on five years' probation, to conclude in November 1997. Barran's request for reinstatement of his Massachusetts license was denied by the Massachusetts licensing authority in June 1993.[2]

On July 26, 1994, the Board voted to provisionally deny Barran a license under Sections 41(4) and 41(5) of the MPA on the basis of disciplinary action taken by another licensing authority and Barran's inability to practice medicine with reasonable skill and safety to patients. Barran filed a written appeal; the

Board thereafter delegated Barran's application to a hearing examiner to conduct a hearing. On November 5, 1994, the hearing examiner issued an adjudication and order directing that a license be issued to Barran. On November 21, 1994, the Commonwealth filed with the Board an application for review and an application for stay of the order; a temporary stay was issued by the Board the next day, and on December 20, 1994 the Board granted a stay of the hearing examiner's order pending full review of the record and a decision on the merits. The Board denied Barran's petition for reconsideration and review of the stay order, and upon oral argument and consideration of the merits, the Board issued its May 23, 1995 order now on appeal to this Court.[3]

## I.

■■■ The Board is the agency charged with the responsibility and authority to oversee the medical profession and to determine the competency and fitness of an applicant to practice medicine within the Commonwealth. *Cassella v. State Board of Medicine,* 119 Pa.Cmwlth. 394, 547 A.2d 506 (1988), *appeal denied,* 522 Pa. 585, 559 A.2d 528 (1989); *Reisinger v. State Board of Medical Education and Licensure,* 41 Pa.Cmwlth. 553, 399 A.2d 1160 (1979). The state has the right to regulate and license professionals to protect the public health; and an applicant for licensure bears the burden of proving that he or she meets the qualifications for obtaining a license to practice a profession or occupation. *Allen v. State Board of Accountancy,* 141 Pa.Cmwlth. 418, 595 A.2d 771

---

1. Barran also questions whether Section 43(a) of the MPA, 63 P.S. § 422.43(a), pertaining to revoked licenses, applies to new applicants for licensure and mandates the issuance of a license to Barran; whether the Board sufficiently notified Barran of the bases for its provisional denial of his request for licensure under Sections 41(4) and 41(5) of the MPA; whether the Board erred in staying the hearing examiner's adjudication; whether counsel to the Board can properly exclude communications submitted directly to the Board by physicians and other medical personnel regarding Barran's ability where Barran has not offered them into the record; whether appeal of the hearing examiner's decision is deemed denied because it was not acted upon within thirty days; and whether the Board improperly commingled prosecutorial and adjudicatory func-

tions and created an impermissible appearance of bias.

2. Barran obtained his M.D. degree in 1984, and prior to committing the crime, Barran completed one year of residency training in obstetrics and gynecology and additional residency training in anesthesia.

3. The scope of review of the Board's order is limited to determining whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704; *Allen v. State Board of Accountancy,* 141 Pa.Cmwlth. 418, 595 A.2d 771 (1991).

(1991); *Quintana, D.O. v. State Board of Osteopathic Medical Examiners,* 77 Pa. Cmwlth. 438, 466 A.2d 250 (1983). Furthermore, an individual has no vested right to practice medicine within the Commonwealth. *Oliver v. Pennsylvania Board of Psychologist Examiners,* 45 Pa.Cmwlth. 195, 404 A.2d 1386 (1979).

■ As the ultimate factfinder, the Board may accept or reject the testimony of any witness in whole or in part, and this Court is bound by the credibility determinations made by the Board. *Atkins v. Workmen's Compensation Appeal Board (Geo–Con, Inc.),* 651 A.2d 694 (Pa.Cmwlth.1994). When reviewing a decision by the Board, this Court may not reweigh the evidence presented or judge the credibility of witnesses. *Kundrat v. State Dental Council and Examining Board,* 67 Pa.Cmwlth. 341, 447 A.2d 355 (1982). Moreover, the Board contains medical doctors and the Secretary of Health pursuant to Section 3 of the MPA, 63 P.S. § 422.3; and it is empowered to make determinations and draw conclusions on factual issues without resorting to additional medical testimony. *Kundrat.*

Section 41(5) of the MPA, relating to the ability to practice medicine, authorizes the denial of a medical license for the following reasons:

> Being unable to practice the profession with reasonable skill and safety to patients by reason of illness, addiction to drugs or alcohol, having been convicted of a felonious act prohibited by the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, or convicted of a felony relating to a controlled substance in a court of law of the United States or any other state, territory, possession or country, or if he or she is or shall become mentally incompetent.

Barran contends that to deny him a license under this section, the Board must demonstrate that his inability to practice medicine stems from one of the specifically stated disabilities, and he asserts that the Commonwealth has failed to prove any of those disabilities. Barran argues that the evidence demonstrated his clinical competency to practice medicine, compassion and caring, ability to handle stress and lack of mental illness. He further argues that the Board ignored evidence from a licensed psychologist who demonstrated that Barran was mentally competent to practice medicine and that the Board members are not competent to draw upon their expertise to determine psychological issues, citing *Makris v. Bureau of Professional and Occupational Affairs,* 143 Pa. Cmwlth. 456, 599 A.2d 279 (1991).

The Board stated that it did not find the testimony of Barran's psychologist compelling and that he admitted a lack of expertise in the area of psychoses. (Barran stated that the killing resulted from his use of ephedrine and an ephedrine psychosis.) The Board concluded from the testimony and evidence presented that Barran exhibited qualities which called into question his ability to practice medicine safely, namely, the brutal and violent murder of his housemate through repeated bludgeoning of the victim with a claw hammer. The Board further stated that Barran failed to persuade the Board that he accepted responsibility for his acts; demonstrated irresponsibility by virtue of his consuming drugs without appropriate research; expressed no remorse for his acts (referring to the killing as an accident which interrupted his career); and admitted that the Massachusetts licensing authority denied reinstatement of his medical license just one year prior to the Pennsylvania application.

II.

■ Barran's argument that the Board may not deny him a license under Section 41(5) because his circumstances do not fit squarely within the five enumerated deficiencies is neither persuasive nor legally supported. Barran bore the burden to demonstrate his qualifications for licensure, and, where the Board specifically rejected Barran's psychological testimony and other evidence concerning his fitness to practice medicine, he failed to sustain his burden of proof. While not explicitly finding that Barran currently suffers a mental illness, the Board rejected the psychologist's opinion that Barran is not currently mentally impaired. Notwithstanding Barran's contentions regarding

the Board's lack of expertise in this area, the law is well settled that it is within the Board's prerogative as factfinder to reject or accept any testimony and to make credibility determinations. *Atkins; Kundrat.* In addition, *Makris* is readily distinguishable and does not support Barran's position. That case involved charges against Makris stemming from his unlawful practice of psychology in violation of the Professional Psychologists Practice Act[4] and whether members of the Board of Psychology could draw upon their own expertise in evaluating Makris' counselling and other activities to determine if he was engaged in the practice of psychology.

■ Barran next contends that the Board may not refuse his license solely on the basis of the Massachusetts suspension. Section 41(4) of the MPA provides that the Board shall have the authority to impose disciplinary or corrective measures on a Board-regulated practitioner for any or all of the following reasons:

> Having a license or other authorization to practice the profession revoked or suspended or having other disciplinary action taken, or an application for a license or other authorization refused, revoked or suspended by a proper licensing authority of another state, territory, possession or country, or a branch of the Federal Government.

Barran maintains that the Board merely "rubber stamped" the Massachusetts authority, and citing prior decisions by the Board, he argues that he may not be punished for his past conviction, unrelated to the practice of medicine, as a way to protect the public. Barran further objects to the Board's failure to consider mitigating factors such as his ephedrine psychosis and remoteness of the crime.

In *Shoenhair v. State Board of Nurse Examiners,* 74 Pa.Cmwlth. 217, 459 A.2d 877 (1983), this Court held that an individual may be denied a license on the sole basis of a license revocation issued by another state's licensing authority. Also, instructive is this Court's decision in *Johnston v. State Board of Medical Education and Licensure,* 49 Pa. Cmwlth. 9, 410 A.2d 103 (1980). In *Johnston* the Court upheld the Board's revocation of a medical license issued to a physician because of disciplinary action taken in another state. The physician was licensed to practice medicine in Pennsylvania and in the state of Washington, which suspended the doctor's license on grounds of gross incompetency due to the death of two of his patients. This Court stated that the "Legislature's authorization of suspension or revocation following disciplinary action taken by another state against a holder of a Pennsylvania license ... is neither unreasonable nor arbitrary and constitutes a valid exercise of the state's police power." *Id.* 410 A.2d at 105. Based upon well-reasoned case law, the Board may deny a license to Barran due solely to the Massachusetts suspension. Moreover, there is no language in Section 41(4), or in *Johnston* as Barran insists, that requires the Board to consider the mitigating factors raised by Barran.

■ Barran nonetheless asserts that Section 43(a) of the MPA, 63 P.S. § 422.43(a), mandates the issuance of a license because five years have elapsed since his conviction and he meets the basic qualifications for licensure. That section refers to a licensee seeking reinstatement when his or her license has been revoked by the Pennsylvania Board and states that:

> Unless ordered to do so by the Commonwealth Court or on appeal therefrom, the board shall not reinstate the license, certificate or registration of a person to practice medicine and surgery or other areas of practice requiring a license, certificate or registration from the board pursuant to this act which has been revoked.... [A]ny person whose license, certificate or registration has been revoked may apply for reinstatement, after a period of at least five years, but must meet all of the licensing qualifications of this act for the license applied for, to include the examination requirement, if he or she desires to practice at any time after such revocation.

Barran has never held a license in Pennsylvania, nor has one been revoked or suspend-

4. Act of March 23, 1972, P.L. 136, *as amended,* 63 P.S. §§ 1201–1218.

ed by the Board. The fact that Barran's felony conviction is more than five years old is therefore irrelevant because Section 43(a) is simply inapplicable to this case. Even if Barran held a Pennsylvania license, it is within the Board's discretion to suspend or revoke that license based upon prior disciplinary and disqualifying factors.

Barran maintains that he was deprived of an opportunity to address the charges against him because the Board failed to specify the reasons for its denial of the license, merely stating that its denial was pursuant to Section 41(5).[5] Barran also claims that the Board erred by failing to give notice that it would base its decision on Section 41(3), 63 P.S. § 422.41(3), authorizing the denial of a license due to a prior felony conviction, and by relying upon that section without giving proper consideration to its true meaning in conjunction with Section 43(a).

The Board's provisional denial was not based upon Section 41(3); the Board later determined that Barran's crime was classified as a felony and therefore did not err in concluding that a license would be denied under Section 41(3) as well. As noted earlier, Section 43(a) is inapplicable to Barran's application and because no legal basis exists which required the Board to interpret the two sections together, Barran's arguments on this issue lack merit and are accordingly rejected by the Court.

■ Claiming procedural irregularities, Barran next argues that the Board stayed the hearing examiner's decision without first affording Barran an opportunity for oral argument and without any consideration

of the likelihood of his success on the merits. The decision to grant or deny oral argument relative to a stay request is solely within the Board's discretion.[6] *See Lyness v. State Board of Medicine*, 529 Pa. 535, 605 A.2d 1204 (1992). The factors governing a stay order include whether the applicant is likely to prevail upon the merits. *Pennsylvania Public Utility Commission v. Process Gas Consumers Group*, 502 Pa. 545, 467 A.2d 805 (1983). At its December 20, 1994 meeting, the Board offered an opportunity to Barran's counsel to present new evidence to the Board prior to its vote granting the stay; he declined to offer any new evidence. It is evident from the record that the *Process Gas* standards were appropriately applied here, whether or not they were explicitly articulated by the Board; and the Board did not abuse its discretion in denying oral argument prior to entering the stay order.

■ Barran incorrectly maintains that the Commonwealth's appeal from the hearing examiner's decision was deemed denied because the appeal was not acted upon within thirty days by the Board. The Board delegated Barran's application to a hearing examiner for hearing and decision pursuant to Sections 901–905 of the Health Care Services Malpractice Act, Act of October 15, 1975, P.L. 390, *as amended*, 40 P.S. §§ 1301.901–1301.905. The procedure provides that an application for review may be made to the Board within twenty days of the date of a hearing examiner's decision and that the Board may hear arguments and additional evidence if deemed advisable. Section 905(b) provides that: "[a]s soon as practicable, the

---

**5.** In *Moses v. State Dental Council and Examining Board*, 42 Pa.Cmwlth. 105, 400 A.2d 664 (1979), the Court rejected petitioner's claim of a lack of adequate notice of certain charges where allegations in the citation issued against Moses put him on sufficient notice that he would be required to justify dental services performed by him at a particular time. Here, Barran possessed full knowledge of the documentation he presented to the Board concerning his criminal acts and the Massachusetts suspension, and he was placed on sufficient notice, by the Board, that he would be required to demonstrate his qualifications for a Pennsylvania medical license.

**6.** Barran maintains that counsel to the Board withheld from the Board certain letters of recom-

mendation sent directly to the Board from physicians and other medical personnel regarding Barran's ability and competency to practice medicine. *See* attachment to Barran's brief, Exhibit C. The letters in question were not offered into the record by Barran as evidence nor were they made available to the Commonwealth. Only evidence contained in the written record made at the time of the hearing before the agency may be considered, *see Herberg v. State Board Of Medical Education and Licensure*, 65 Pa.Cmwlth. 358, 442 A.2d 411 (1982); therefore, this Court correctly issued its September 7, 1995 order granting the Board's motion to strike extraneous material from the reproduced record.

[Board] shall make a decision and shall file the same with its finding of the facts on which it is based...." There is no time limitation on the issuance of a determination by an agency on appeal; nor is there a "deemed denial" period contained in the statute. Barran's reliance upon 1 Pa.Code § 35.190, relating to appeals to agency heads from rulings of presiding officers, lends no support for his position, and he cites no case to support his deemed denial claim.

■ Finally, Barran raises due process arguments by virtue of an alleged impermissible commingling of functions by the Board where it provisionally refused to issue Barran a license and later adjudicated that he should not be licensed in Pennsylvania. Barran contends that the Board's action violated *Lyness*, where the Supreme Court determined that an impermissible appearance of bias was created when the same Board members initiated disciplinary charges against a physician and later adjudicated those charges. Nevertheless, an impermissible commingling of functions is not established merely because an agency performs more than one function or role in a particular process. *Makris.*

Unlike *Lyness*, the subject matter here was an application for a medical license, initiated by Barran, where the Board based its provisional denial on information disclosed by Barran. The Board did not institute disciplinary or other prosecutorial action against Barran; it merely issued the provisional license denial, granted Barran's request for a hearing to afford him an opportunity to demonstrate his fitness for licensure and thereafter determined, upon a full review of the record, that Barran should not be licensed to practice medicine in Pennsylvania. Barran has not established bias or otherwise proved an impermissible commingling of functions performed by the Board.

For the reasons articulated in this opinion, the Court affirms the order of the Board.

### ORDER

AND NOW, this 25th day of January, 1996, the order of the State Board of Medicine is affirmed.