■ In the Matter of PETER D. BARRAN, Petitioner, v DEPARTMENT OF EDUCATION OF STATE OF NEW YORK et al., Respondents.
[798 NYS2d 266]—

Peters, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of Supreme Court, entered in Albany County) to review a determination of respondent Committee on the Professions which denied petitioner's application for a license to practice medicine in New York.

Petitioner, a 1984 graduate of Stanford University Medical Center, completed an internship in obstetrics and gynecology at Oregon Health Science University and relocated, a year later, with his paramour, Richard Brummett, to Boston to begin a residency in anesthesiology at the New England Medical Center. In October 1986, he brutally murdered Brummett by bludgeoning him in the head with a claw hammer after being told that the relationship was ending. Immediately after the murder, petitioner brought his dogs to his mother's home, took out cash from several ATMs on the way back to his apartment, and fled to Oregon. One week later, he surrendered himself to the Oregon police which extradited him to Massachusetts.

Petitioner initially pleaded not guilty by reason of insanity and remained imprisoned in a mental institution for 25 months while awaiting trial. However, on the day of trial, he pleaded guilty to voluntary manslaughter and was sentenced to 12 to 20 years in prison. In 1989, he moved to have his sentence revised. While that motion was pending, he made several applications for early parole, all of which were denied. In 1992, petitioner amended his earlier motion to revise his sentence, now mentioning an ephedrine-induced psychosis defense. Petitioner explained that for approximately one month prior to Brummett's death, he used ephedrine to lose weight. When Brummett informed petitioner that the relationship was over, he was so distraught and unable to sleep that he ingested four antihistamines, the rest of Brummett's pain medication and one half a bottle of whiskey. Petitioner contended that the combination of these substances resulted in pronounced psychological effects and an adverse chemical reaction known as ephedrine-induced psychosis. The Massachusetts Superior Court granted petitioner's mo-

tion, sentenced him to time served and ordered his immediate release.[1] Petitioner was eventually licensed to practice medicine in Montana, but was denied licensure in both Pennsylvania and Massachusetts (*see Barran v State Bd. of Medicine,* 670 A2d 765 [1996], *appeal denied* 544 Pa 685, 679 A2d 230 [1996]).

Now seeking licensure in New York, petitioner presented his own testimony and that of two witnesses, both doctors, who had worked with him in a professional setting. In addition to proffering glowing testimony from his two physician witnesses regarding his commitment to his patients and competence to practice medicine, petitioner once again explained, with much greater elaboration, the events which led to Brummett's death. Opposing the application was the testimony of a sergeant with the Boston Police Department who investigated the murder. Reports, testimony and records relating to the criminal proceeding were also admitted. The Office of Professional Discipline (hereinafter OPD) also proffered petitioner's licensure applications from other states. The hearing panel unanimously found the murder to be an isolated incident caused by ephedrine-induced psychosis and that petitioner should be granted licensure in New York. OPD successfully appealed this determination to respondent Committee on the Professions (hereinafter COP) and petitioner commenced this CPLR article 78 proceeding. Supreme Court, finding an issue of substantial evidence, transferred the proceeding to this Court (*see* CPLR 7804 [g]).

Petitioner's procedural challenge centers on 8 NYCRR 28.6, which provides that an appellant "may" submit a brief to COP and the opposing party within 30 days after its filing of a notice of appeal. Although there is no challenge to the timely filing of the notice of appeal, petitioner contends that the appeal was not perfected because OPD failed to timely file a brief. We disagree. Unlike Public Health Law § 230-c (4), which details that a notice of review of a determination made by a committee on professional conduct shall only be perfected if a brief is timely submitted to the Administrative Review Board for Professional Medical Conduct, 8 NYCRR 28.6 does not include the same mandate. Working from the plain language of that regulation (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 76), we find that the use of the word "may" in 8 NYCRR 28.6 clearly indicates an intent by the drafters, in conformance with the regulatory scheme, that in reviewing a determination addressing "good moral character," the filing of a brief is optional (*see generally Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib.,* 2 NY3d 249, 255 n 1 [2004];

---

1. No copy of the court's determination is included in this record.

*Matter of Scoglio v County of Suffolk,* 85 NY2d 709, 712 [1995]; *Matter of Niagara Mohawk Power Corp. v State of New York,* 300 AD2d 949, 953 [2002]).[2]

Next recognizing that the Legislature has vested respondent Department of Education and its Commissioner, among others, with the responsibility to evaluate whether an applicant seeking professional licensure has demonstrated good moral character (*see* Education Law § 6524 [7]; *Matter of Horoshko v Ambach,* 122 AD2d 447, 447 [1986]), and that the determination, made after an evidentiary hearing, will be upheld if supported by substantial evidence (*see Matter of Anamdi v New York State Educ. Commr.,* 244 AD2d 726, 727 [1997], *lv denied* 92 NY2d 806 [1998]; *Matter of Sayegh v New York State Educ. Dept.,* 195 AD2d 938, 939 [1993]; *Matter of Bevacqua v Sobol,* 176 AD2d 1, 3-4 [1992]), we find no basis to disturb the determination rendered.

COP properly noted that petitioner's commission of the crime would not, necessarily, be a bar to his professional licensure. Its concern, instead, centered on the deliberate and violent nature of the act. It recounted the description given by the Assistant District Attorney during the change of plea hearing and noted that, at that hearing, even petitioner's own counsel indicated that petitioner had numerous troubling episodes throughout his life which included incidents of rage and physical violence. COP, therefore, concluded that contrary to the hearing panel's determination, petitioner has a history of violent responses to emotional stimuli which raised serious concern regarding petitioner's self-control. Moreover, COP recognized that while petitioner appeared to be remorseful, numerous statements made by him on the record cast doubt on his sincerity and the level of responsibility that he had accepted for taking the life of another.

COP's next concern was petitioner's ingestion of over-the-counter drugs, prescription drugs and alcohol to ease a stressful situation when he was actively involved in an anesthesiology residency; COP believed that he knew or should have known of the potential synergistic effects of these substances. Thereafter focusing on petitioner's "methodical, deliberate and successful" actions after the crime to escape detention and apprehension, "antithetical to his claim of incoherence," it questioned the hearing panel's unsubstantiated conclusion that the Massachusetts Superior Court released petitioner upon its acceptance of the ephedrine-induced psychosis theory. Moreover, COP

2. By letter dated May 31, 2002, the parties were advised that OPD's request for an extension to file a brief was denied.

noted that the only evidence of such an ephedrine-induced psychosis was petitioner's self-serving statements since no drug testing could have been conducted because he eluded police authorities for a week after his commission of the crime. With COP further characterizing petitioner's supporting testimony as more directly related to his medical expertise than to the issue of his moral character, and with its full consideration of the factors detailed in Correction Law § 753, we find substantial evidence to support its denial of licensure to petitioner.

Cardona, P.J., Spain, Carpinello and Mugglin, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.