# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Local Dispensaries, LLC, : 
                Petitioner : 
                 : 
         v. : No. 421 C.D. 2024
                 : ARGUED: December 9, 2024
Department of Health, : 
                Respondent : 

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE MATTHEW S. WOLF, Judge
             HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION BY**
**SENIOR JUDGE LEADBETTER**                **FILED: January 29, 2025**

Petitioner, Local Dispensaries, LLC, petitions for review of the Acting Secretary of Health's final determination affirming the 2018 denial of Petitioner's Medical Marijuana Dispensary Permit Application of Local Dispensaries for the Southwest Region (Region 5) by the Department of Health, Office of Medical Marijuana.[1] We affirm.[2]

---

[1] A limited liability company, Petitioner was created for purposes of applying for and operating medical marijuana dispensaries in the Phase 2 process. Proposed Report (Local Dispensaries' Appl.), Finding of Fact (F.F.) F.F. No. 39 at p. 11.

[2] The final determination rendered moot *Local Dispensaries, LLC v. Pennsylvania Department of Health and Dr. Debra L. Bogen, Acting Secretary, Department of Health* (Pa. Cmwlth., No. 14 M.D. 2024) (*Local Dispensaries, LLC I*), Petitioner's January 2024 petition for review requesting that this Court compel the Acting Secretary to issue an order ruling on Petitioner's brief on exceptions pertaining to the appeal of its Phase 2 application denial. In April 2024, Petitioner filed a praecipe to discontinue in *Local Dispensaries, LLC I*.

The pertinent background is as follows.[3]  In 2016, the General Assembly enacted the Medical Marijuana Act[4] "charg[ing] the Department to implement and regulate the Act, including soliciting, receiving, and awarding permits to operators to grow/process and dispense medical marijuana."  Proposed Report (The Med. Marijuana Act and Regs.), Finding of Fact (F.F.) No. 2 at p. 4.  Pursuant to Section 616(2) of the Act, 35 P.S. § 10231.616(2), the Department initially could issue no more than 50 dispensary permits.  *Id.*, F.F. No. 4 at p. 4.  Dividing the state into 6 distinct regions for purposes of issuing permits, the Department issued a total of 27 dispensary permits in Phase 1 and 23 permits in Phase 2.  *Id.*, F.F. Nos. 5 and 6 at p. 4.

To apply for a permit, "[e]very dispensary applicant was required to submit their proposal to operate on the Department's Medical Marijuana Dispensary Permit Application."  *Id.* (Phase 2 Med. Marijuana Dispensary Appl. and Process), F.F. No. 13 at p. 6.  The four-step process for each application "comprised intake, assessment, evaluation,  and permitting."  *Id.*, F.F. No. 16 at p. 7.  The evaluation process was conducted by a team of scorers, with each of the regions having a separate scoring team which evaluated all applicants in the region to which it was assigned.  The process consisted of reviewing the contents and quality of every application in the region and providing an administrative score.  *Id.*, F.F. No. 19.  During processing, the Department "grouped all applications by region, identified the top scorers, and determined who would be awarded a permit."  *Id.*, F.F. No. 20.

---

[3] Noting that Petitioner did not dispute the central facts of the case, the Acting Secretary adopted the facts as found by the Chief Hearing Examiner on pages 4-13 of her proposed report. Final Determination at p. 2.

[4] Act of April 17, 2016, P.L. 84, *as amended*, 35 P.S. §§ 10231.101-10231.2110.

The applications were scored on 13 separate criteria, "including narratives concerning an applicant's Inventory Management (Section 14) process and its Business History and Capacity to Operate (Section 19)." *Id*., F.F. No. 34 at pp. 9-10. Sections 14 and 19 were each worth 75 points. Section 14 "required applicants to '[p]lease describe your approach regarding the implementation of an inventory management process. This approach must also include a process that provides for the recall of medical marijuana products and the management of medical marijuana product returns from you to the originating grower/processor.'" *Id*., F.F. No. 35 at p. 10. Section 19 required applicants to "[d]escribe your business history and your ability and plan to maintain a successful and financially sustainable operation." *Id*., F.F. No. 36.

Notably, the narratives for both Sections 14 and 19 that Petitioner submitted as part of its Southwest Region (Region 5) application were the same word-for-word as the narratives that it submitted as part of its Southcentral Region (Region 3) application. *Id*. (Local Dispensaries' Appl.), F.F. Nos. 43 and 46 at pp. 11-12. However, these sections of the respective applications were scored somewhat differently by the separate scoring panels. Section 14's score in Region 5 was 51.25 (out of a total score of 728.25 points) and 53.50 in Region 3. *Id*., F.F. Nos. 44 and 45 at p. 12. Section 19's score in Region 5 was 55.00 (out of a total score of 728.25 points) and 60.25 in Region 3. *Id*., F.F. Nos. 47 and 48.

At issue here is the 2018 denial of Petitioner's Phase 2 application for a dispensary permit for Region 5. The Department stated that the application was being denied because its score of 728.25 points was not in the top 4 scores of Region 5. *Id*., F.F. No. 41 at p. 11. Petitioner missed having one of the top scores by only

3

1.50 points.[5]  *Id*. (History) at p. 2.  However, Petitioner's Phase 2 application for Region 3 scored sufficiently high to earn a dispensary permit.  *Id*., (Local Dispensaries' Appl.), F.F. No. 42 at p. 11.

Before the Chief Hearing Examiner, Petitioner argued that the scoring method was arbitrary "premised on the undisputed fact that although it used a substantively identical text narrative in Sections 14 and 19 of its dispensary applications for Region 3 and Region 5, the scores it received on those sections were not identical."  *Id*. (Discussion, C. Merits) at p. 24.  In addition, Petitioner argued that: "(1) the Department did not have bullet points or detailed information for these two sections of the application to assist the applicants and to help establish a more specific scoring rubric; (2) it did not run a check for statistical outliers in the scoring; and (3) it did not allow the [evaluation] committee to compare applications during the evaluation process."  *Id*. at pp. 24-25.  Nonetheless, the Chief Hearing Examiner found that there was no arbitrariness in the process.  *Id*. at p. 28.

The Acting Secretary affirmed the proposed report and Petitioner's petition for review to this Court followed.  The two issues on appeal are (1) whether the scoring process for the Department's evaluation of medical marijuana permit applications was arbitrary and capricious; and (2) whether the final determination was supported by substantial evidence.[6]

---

[5] In Region 5, the Department issued dispensary permits to the 4 highest scorers: 749.25 points, 747.00 points, 735.50 points, and 729.75 points.  Proposed Report (Local Dispensaries' Appl.), F.F. No. 38 at p. 10.

[6] Petitioner also raises the issue of whether the Acting Secretary erred in concluding that there was no appropriate remedy.  Where, as here, we determine that the Department's process was not arbitrary and capricious, there is no need to discuss an adequate remedy.  *See* Final Determination at p. 7 (citing Proposed Report (Discussion, C. Merits) at p. 28, n.17).

4

**I.**

In arguing that the scoring process was arbitrary and capricious, Petitioner primarily relies upon the fact that Sections 14 and 19 in its applications were the same word-for-word in Regions 3 and 5 but scored differently. In addition, it maintains that the use of two scoring panels was problematic and that treating identical sections differently is the very definition of arbitrary.[7] Further, it asserts that the lack of post-scoring quality assurance mechanisms also rendered the process arbitrary and capricious.

We conclude that the administrative action at issue was not arbitrary and capricious. An action is arbitrary and capricious where it is unsupportable on any rational basis. *Cary v. Bureau of Pro. & Occupational Affs., State Bd. of Med.*, 153 A.3d 1205, 1210 (Pa. Cmwlth. 2017). An administrative agency has wide discretion in establishing rules, regulations, and standards and in performing its administrative duties. *Unified Sportsmen v. Pa. Game Comm'n*, 18 A.3d 373, 382 (Pa. Cmwlth. 2011). As the Chief Hearing Examiner stated:

> The "action" here is an evaluation that produced different scoring results for identical responses. The rational basis *and* the explanation for this evaluation differential is that there were <u>two different scoring panels</u> assigned to score

---

[7] Petitioner argues that it did not waive a challenge to the hallmark of the Phase 2 scoring process, i.e., two scoring panels. Petitioner's Reply Br. at pp. 4-5. The Department alleges that Petitioner raised the argument for the first time on exceptions thereby waiving it on appeal.

The Chief Hearing Examiner observed that "[i]t does not appear that [Petitioner] is suggesting that the decision to use more than one panel, in and of itself, was arbitrary." Proposed Report (Discussion, C. Merits) n.15 at p. 25. At all ends, Petitioner consistently argued that the scoring was inconsistent due to the different treatment of identical sections that its applications received in Regions 3 and 5 and that this inconsistency amounted to arbitrary and capricious action and constituted an abuse of discretion. This position encompassed any issues with using two scoring panels and how that affected identical submissions and/or sections.

two different regions and that the two different panels did not compare or discuss scores with each other. Instead, in the exercise of its discretion, to work toward uniformity and obtain quality informative responses, the Department (1) established a point allocation guide to insure [sic] a level of consistency and quality assurance ([Notes of Testimony] (N.T.) at 34); (2) had committee members discuss each application separately to cull out what points in the narrative of the application warranted more credibility and weight (N.T. 23); and[] (3) tasked its personnel with examining how other states' evaluations processes work *before* settling on their own process. N.T. 24. Having chosen these three methods to foster uniformity and having chosen *not* to require that every application from every region [] be scored by the same panel, does not mean that the Department's action was arbitrary. It merely demonstrates a difference of opinion on the scoring techniques employed.

Proposed Report (Discussion, C. Merits) at pp. 25-26 (emphasis in original).

At any rate, Petitioner did not establish that the scoring process or methodology was so lacking that it had no rational basis. Its evidence primarily consisted of showing that both Sections 14 and 19 were the same in the applications for both Region 3 and Region 5. As the Acting Secretary concluded, "non-identical scores do not, *ipso facto*, render the action arbitrary." Final Determination at p. 4 (quoting Proposed Report (Discussion, C. Merits) at p. 26). This is especially true where the evaluation of applications involves subjective judgment and some answers are in narrative form. In addition, the applications were being judged against different competitors in the different regions.

As for employing different scoring panels, Petitioner observed that the Act does not require different panels. As the Chief Hearing Examiner responded: "While this is true, neither does it forbid them." Proposed Report (Discussion, C. Merits) n.15 at p. 25. The decision to use more than one panel, in and of itself, was

6

not arbitrary. Having a dedicated panel for each region meant that all applications in Region 5, for example, were scored by the same team which, presumably, could take into account particular regional considerations, and then ranked against only the other Region 5 applications. *Id*. (Add'l Findings of Fact), F.F. No. 68 at p. 15.

In addition, the lack of post-scoring quality assurance mechanisms is not an indication that the process was automatically arbitrary and capricious. As the Acting Secretary stated:

> [T]he record shows that [the Department] utilized trained persons with varied expertise to discuss the narratives provided for these sections and weigh the merits of the response. *See* [N.T.] at 23. The mere fact that these measures were established, for the rational purpose of fostering consistency, refutes [Petitioner's] claims that these sections were scored arbitrarily and capriciously.

Final Determination at p. 6.

Moreover, "[a]djustments to an application's score after the scoring committee's even-handed determination on the merits could just as easily, if not more so, 'raise the specter of arbitrariness.'" *Id*. at p. 5 (quoting Proposed Report (Discussion, C. Merits) at p. 28). In any event, the Act does not require subject-matter experts, prohibit the establishment of any number of scoring committees, or specify that a detailed scoring rubric for every section of the application must be present. *Id*. at pp. 5-6.

As the Department observed, Petitioner had the burden to prove that its Region 5 application warranted a permit. *Barran v. State Bd. of Med.*, 670 A.2d 765, 767 (Pa. Cmwlth. 1996) (applicant has the burden of proving it meets all of the requirements necessary for obtaining a permit). Instead, it attacked the scoring process, asserting that it would have chosen a different process or scoring

7

methodology than the one the Department employed. This misses the mark; the issue is not whether the process was perfect or might have been better—the issue is whether it is devoid of any rational basis. The General Assembly granted the Department the authority to grant medical marijuana dispensary permits and afforded it significant discretion as to how to carry out the task. *See* 35 P.S. § 10231.603(a) and (a.1) (criteria governing the application review). Consequently, Petitioner faced a high bar to establish that the Department's administrative action at issue was arbitrary and capricious.

## II.

Petitioner contends that the final determination is not supported by substantial evidence, primarily arguing that there is no support in the record for the finding that the application process was consistent and used quality assurance mechanisms. To the contrary, Petitioner maintains that the Chief Hearing Examiner found that there were no such mechanisms in place to ensure that application scores were consistent. *See* Proposed Report (Add'l Findings of Fact), F.F. No. 94 at p. 20 ("There is no formal quality assurance program to check for consistency or the 'mood' on a particular day of a particular committee member. N.T. 34-35").

There is substantial evidence of record to support the final determination.[8] As the findings detail, there is copious evidence as to how the Department decided upon its scoring process and how it was designed to promote

---

[8] Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 639-40 (Pa. 1983). It is irrelevant whether the record contains evidence to support findings other than those made by the tribunal; the critical inquiry is whether there is evidence to support the findings actually rendered. *Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Rev.*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008). In ascertaining whether substantial evidence exists, the reviewing court must give the party in whose favor the decision was rendered the benefit of all inferences that can be logically and reasonably drawn from the evidence. *Id.*

consistency and quality assurance.  Proposed Report (Phase 2 Med. Marijuana Dispensary Appl. and Process), F.F. Nos. 13-38 at pp. 6-10.[9]

Accordingly, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER**
President Judge Emerita

Judge Fizzano Cannon did not participate in the decision for this case.

---

[9] The record reflects that the Department established that its scoring process ensured that each application was reviewed and scored one at a time and on its own merits.  Pursuant to the protocol, no application was scored in conjunction with another one and no sections were compared or contrasted.  As the findings provide, this methodology was purposeful.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Local Dispensaries, LLC,      :
           Petitioner      :
           :
     v.            :      No. 421 C.D. 2024
           :
Department of Health,      :
           Respondent      :

## O R D E R

AND NOW, this 29th day of January, 2025, the final determination of the Acting Secretary of the Department of Health affirming the denial of the Medical Marijuana Dispensary Permit Application of Local Dispensaries for the Southwest Region (Region 5) filed by Petitioner, Local Dispensaries, LLC, is AFFIRMED.

_____
**BONNIE BRIGANCE LEADBETTER**
President Judge Emerita