IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mardea Freeman, LPN,                        :
              Petitioner              :
                                       :
               v.                            : No. 1341 C.D. 2016
                                       : Submitted: December 30, 2016
Bureau of Professional and                  :
Occupational Affairs,                       :
State Board of Nursing,                      :
              Respondent              :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT              FILED: April 20, 2017

      Mardea Freeman, L.P.N. (Freeman) petitions for review of an order of the State Board of Nursing (Board) suspending her practical nursing license for three years, to be served with a six-month active license suspension and followed by two and one-half years of probation. The Board's sanction departed from the Hearing Examiner's recommendation that Freeman's license be suspended for three years, to be served while on probationary status. Freeman contends that the Board erred because its six-month active license suspension was based upon unsubstantiated factual assumptions. For the reasons that follow, we vacate the Board's order and remand this matter to the Board for imposition of a penalty based on the facts of record.

      Freeman holds a professional nursing license in Pennsylvania, which the Board issued on July 26, 2013. On December 18, 2013, Freeman was charged with two misdemeanor offenses, theft by deception and criminal conspiracy to

commit theft by deception, related to an incident at a Home Depot store. She was admitted to Accelerated Rehabilitative Disposition (ARD) for her misdemeanor conviction for criminal conspiracy to commit theft by deception.

On April 23, 2014, while employed at Majestic Oaks Nursing and Rehabilitation Center in Bucks County, Freeman was arrested for stealing jewelry and bank account information from a patient. She was charged with three misdemeanor offenses: theft by unlawful taking, theft by deception and access device fraud.[1] On October 20, 2014, Freeman was convicted of theft by deception, a first-degree misdemeanor, for using a patient's checking account information to pay Freeman's electric and phone bills. The charge for theft of jewelry was *nolle prossed*. The trial court sentenced Freeman to 24 months probation and directed that Freeman was "not to be employed taking care of senior citizens." Reproduced Record at 145 (R.R. __).

On March 15, 2014, Freeman filed an application with the Board for renewal of her practical nursing license. The renewal application included the following question:

> Since your initial application, or last renewal, whichever is later, have you been convicted, found guilty or pleaded nolo contendere, or received probation without verdict, or accelerated rehabilitative disposition (ARD) as to any felony or misdemeanor ... or do you have any criminal charges pending and unresolved in any state or jurisdiction?

R.R. 147. Freeman answered "No" to the question, despite the fact that, at the time she filed the application, she was in ARD as a result of the Home Depot case.

---

[1] As a result of the theft charges, Freeman was dismissed from ARD on the Home Depot incident.

2

On March 27, 2015, the Board issued an order to show cause why Freeman's license should not be suspended, revoked, restricted, or a civil penalty imposed, for violating the Practical Nurse Law, 63 P.S. §§651-667.8,[2] and the Criminal History Record Information Act (CHRIA), 18 Pa. C.S. §§9101-9183. We summarize the six counts set forth by the Board as follows:

(1) under Section 16(a)(5) of the Practical Nurse Law, 63 P.S. §666(a)(5),[3] because Freeman was convicted of a crime of moral turpitude (criminal conspiracy to commit theft by deception from Home Depot);

(2) under Section 16(a)(5) of the Practical Nurse Law, because Freeman was convicted of a crime of moral turpitude (theft by deception from a Majestic Oaks resident);

(3) under Section 9124(c)(2) of CHRIA,[4] because Freeman was convicted of a misdemeanor related to the profession (theft by deception from a Majestic Oaks resident);

(4) under Section 16(a)(4) of the Practical Nurse Law, 63 P.S. §666(a)(4),[5] in that Freeman committed fraud or deceit in

---

[2] Act of March 2, 1956, P.L. (1955) 1211, *as amended*, 63 P.S. §§651-667.8.

[3] Section 16(a)(5) of the Practical Nurse Law authorizes the Board to revoke or suspend any license where the Board finds that the licensee has been convicted of a crime of moral turpitude in the courts of this Commonwealth.

[4] Section 9124(c)(2) states:

> State action authorized.--Boards, commissions or departments of the Commonwealth authorized to license, certify, register or permit the practice of trades, occupations or professions may refuse to grant or renew, or may suspend or revoke any license, certificate, registration or permit for the following causes:
>
> * * *
>
> (2) Where the applicant has been convicted of a misdemeanor which relates to the trade, occupation or profession for which the license, certificate, registration or permit is sought.

18 Pa. C.S. §9124(c)(2).

[5] Section 16(a)(4) of the Practical Nurse Law authorizes the Board to revoke or suspend any license where the Board finds that the licensee has committed fraud or deceit in the practice of practical nursing or in securing admission to practice.

3

securing her admission to practice (by failing to truthfully answer the question about having pending criminal charges on her biennial renewal application);

(5) under Section 16(a)(8) of the Practical Nurse Law, 63 P.S. §666(a)(8),[6] in that Freeman was guilty of unprofessional conduct (by committing theft by deception from a Majestic Oaks resident); and

(6) under Section 16(a)(3) of the Practical Nurse Law, 63 P.S. §666(a)(3),[7] for violating the Board's regulation at 49 Pa. Code §21.148(b)(4),[8] which prohibits nurses from misappropriating property or money from patients (by committing theft by deception from a Majestic Oaks resident).

Freeman filed an answer to the order to show cause and requested a hearing. The Board appointed a Hearing Examiner to conduct a hearing and issue a proposed adjudication and order.

At the hearing, the prosecuting attorney offered into evidence the order to show cause, Freeman's answer and the records of Freeman's convictions and sentences. The prosecuting attorney also introduced a copy of Freeman's license renewal application, dated March 15, 2014, which, as noted above, incorrectly reported that she had no criminal charges pending.

Freeman testified on her own behalf. Regarding the criminal charges that led to ARD, Freeman explained that a friend had asked her to drive her to Home Depot to make a return. Her friend did not have a receipt or her driver's

---

[6] Section 16(a)(8) of the Practical Nurse Law authorizes the Board to revoke or suspend any license where the Board finds that the licensee has been guilty of unprofessional conduct or such conduct as to require a suspension or revocation in the public interest.

[7] Section 16(a)(3) of the Practical Nurse Law authorizes the Board to revoke or suspend any license where the Board finds that the licensee has willfully or repeatedly violated any provision of the Board's regulations.

[8] The Board's regulation prohibits licensed practical nurses from misappropriating equipment, materials, property, drugs or money from an employer or patient. 49 Pa. Code §21.148(b)(4).

license, which the store required to process a return. Accordingly, Freeman gave her driver's license to the store clerk. While Freeman was waiting for the return to be processed, her friend borrowed her car keys and placed shoplifted merchandise in Freeman's car.

Regarding the conviction for theft, Freeman acknowledged that she used a patient's personal financial information to pay her utility bills. She explained:

> Well, at the time, I was raising my son on my own as a single mother. Everything was on the verge of being cut off. You know, I didn't want to have to go back to the shelter. I made a stupid decision to do that.

Notes of Testimony (N.T.), 7/2/2015, at 33; R.R. 56. Freeman expressed remorse for her actions, stating:

> I mean, I'm just nervous because --- you know, I worked so hard to get where I am today. I do regret the --- some of the decision[s] that I've made, because I love my career. I love helping people. I love what I do, and based on the decisions that I've made, it's just jeopardizing my whole career. I had to spend lots of money, you know, for lawyers and court costs, fees and everything. But yes, I do regret being here today, in the situation that I'm in today, I mean.

*Id.* at 43-44; R.R. 66-67.

Freeman recounted the difficult circumstances she overcame in her personal life. Freeman explained that, after graduating from high school, she became involved in an abusive relationship for approximately one year. She moved to a shelter, where she lived for two years. *Id.* at 46; R.R. 69. While living at the shelter, Freeman enrolled in a certified nursing assistant (CNA) training program and obtained her CNA license. She found employment and, after saving

5

some money, moved out of the shelter and into a one-bedroom apartment. Shortly thereafter, Claimant gave birth to a son, for whom she was solely responsible because the father was incarcerated. Freeman worked several jobs while continuing her nursing education and, in April 2013, earned her certificate in practical nursing.

Freeman testified that she currently works for Preferred Healthcare and HealthCare Stat. She cares for two pediatric patients. One of these patients is non-ambulatory and needs assistance with eating, taking medications and toileting. Freeman works with him approximately 47 hours a week. Freeman cares for her other patient, who is on a ventilator with a tracheostomy tube, approximately 16 hours per week at nighttime, administering medication and recording the patient's vital signs.

Freeman offered the testimony of several character witnesses. Renee Howard, a classmate and co-worker of Freeman, testified that she was familiar with Freeman's reputation for being hardworking and diligent, explaining "she's always maintained a sense of integrity … always … making sure she has [the patients'] best interests at heart." *Id.* at 21; R.R. 44. Several other witnesses attested to Freeman's good character and reputation: Gregory Mitchell, Freeman's husband; Nahshon Langley, Freeman's brother; Francine Williams, Freeman's pastor; and Sybil Miller, Freeman's friend.

On November 19, 2015, the Hearing Examiner issued a proposed adjudication and order. The Hearing Examiner's findings of fact recited Freeman's two criminal episodes, including that "[t]he charge of Theft by False Impression was the result of [Freeman's] theft of property, including jewelry and checking account information from a patient at Majestic Oaks where [Freeman]

6

was working as a nurse through a staffing agency." Proposed Adjudication, 11/19/2015, at 5, Finding of Fact No. 14; Freeman Brief at P39. The Hearing Examiner concluded that Freeman was subject to disciplinary action under Section 16(a)(3), 16(a)(4), 16(a)(5) and 16(a)(8) of the Practical Nurse Law and Section 9124(c)(2) of CHRIA for her convictions for conspiracy to commit theft at Home Depot and theft of property from a resident at Majestic Oaks.[9]

---

[9] Specifically, the Hearing Examiner concluded:

> [Freeman] is subject to disciplinary action under Count One because [Freeman] violated Section 16(a)(5) of the [Practical Nurse Law], 63 P.S. §666(a)(5), by her conviction for Criminal Conspiracy, 18 Pa.C.S. §903, related to Theft By Deception – False Impression, a crime of moral turpitude.

> [Freeman] is subject to disciplinary action under Count Two because [Freeman] violated Section 16(a)(5) of the [Practical Nurse Law], 63 P.S. §666(a)(5), because [Freeman] was convicted of Theft by Deception – False Impression, 18 Pa. C.S. §3922(a)(1), a crime of moral turpitude.

> [Freeman] is subject to disciplinary action under Count Three because [Freeman] violated Section 9124(c)(2) of [CHRIA], 18 Pa.C.S. §9124(c)(2), because [Freeman] has been convicted of a misdemeanor related to the practice of the profession.

> [Freeman] is subject to disciplinary action under Count Four because [Freeman] violated Section 16(a)(4) of the [Practical Nurse Law], 63 P.S. §666(a)(4), because [Freeman] committed fraud or deceit in securing her admission to such practice by answering falsely on her application for renewal of her license.

> [Freeman] is subject to disciplinary action under Count Five because [Freeman] has been [found] guilty of unprofessional conduct under Section 16(a)(8) of the [Practical Nurse Law], 63 P.S. §666(a)(8), because she stole checking account information from a patient.

> [Freeman] is subject to disciplinary action under Count Six because [Freeman] violated Section 16(a)(3) of the [Practical Nurse Law], 63 P.S. §666(a)(3), because [Freeman] misappropriated equipment, materials, property, drugs or money from an employer or patient.

Proposed Adjudication, 11/19/2015, at 7-8, Conclusions of Law 4-9; Freeman Brief at P41-P42 (internal notations omitted).

The hearing examiner acknowledged that Freeman's conduct was serious and violated patient trust. After balancing the seriousness of the offenses against Freeman's mitigation evidence, the Hearing Examiner recommended that her license be suspended for three years, with the entire period of suspension immediately stayed in favor of probation for the entire suspension period.

The Hearing Examiner's proposed adjudication informed the parties of the post-hearing procedures. It advised the parties that the Board intended to review the proposed adjudication and order. Specifically, the notice stated:

> The Board has expressed its intent to review this proposed adjudication and order pursuant to 1 Pa. Code § 35.226(a)(2), and the Board is not bound by the hearing examiner's proposed adjudication or order. The parties have the right to file a brief on exceptions, and any error not raised by a brief on exceptions will be deemed waived. 1 Pa. Code §§ 35.211-35.213.

*Id.* at 2; Freeman Brief at P36. Neither Freeman nor the prosecuting attorney filed a brief on exceptions.

On July 26, 2016, the Board, after conducting its own review of the record, adopted the Hearing Examiner's findings of fact and conclusions of law. The Board concluded that a more severe penalty was warranted, explaining as follows:

> [Freeman] was convicted of theft by deception for stealing jewelry from and using the bank account of an elderly patient to pay her personal bills. Stealing from a vulnerable patient for whom a licensed nurse has the duty of care is among the most egregious offenses that come before the Board. In fact, in the vast majority of cases in which a licensee has been convicted of stealing from a patient, the Board has revoked the nurse's license. However, in this case, the Board agrees with the hearing examiner that significant mitigation exists given the instability [Freeman] faced in her life and the fear that must have generated. In addition, the Board gives mitigating weight

8

to the sincere remorse expressed by [Freeman] and the many steps she has taken to create stability for herself and her family.

Despite the significant mitigation, the Board cannot overlook the seriousness of stealing from an aged and infirm patient and finds that the imposition solely of a period of probation is not appropriate given [Freeman's] very serious misconduct. The Board finds that [Freeman] must be subject to a period of active suspension and that [Freeman] should be required to complete six hours of continuing education in professional ethics.

Board Adjudication, 7/26/2016, at 2-3; Freeman Brief at P29-P30. Accordingly, the Board imposed an active suspension of six months to be followed by 30 months of probation. Freeman petitioned for this Court's review.

On appeal,[10] Freeman raises two arguments. First, she contends that the Board violated her right to due process by relying upon extra-judicial facts and legal conclusions to support the enhanced penalty. Second, Freeman contends that the Board failed to properly weigh her mitigation evidence against the alleged misconduct. The Board counters that the Board's findings are supported by substantial evidence, that Freeman was afforded due process, and that the Board appropriately exercised its discretion in determining the appropriate sanction.

The Board is charged with the responsibility of regulating the nursing profession. *See generally Barran v. State Board of Medicine*, 670 A.2d 765, 767 (Pa. Cmwlth. 1996). Section 16 of the Practical Nurse Law, 63 P.S. §666, sets

---

[10] Our review determines whether there has been an error of law or a violation of constitutional rights, or whether the findings of fact are supported by substantial evidence. *Bethea-Tumani v. Bureau of Professional and Occupational Affairs*, 993 A.2d 921, 925 n.6 (Pa. Cmwlth. 2010) (citations omitted). Our review of the Board's disciplinary sanction is deferential, *i.e.,* it is "limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions." *Id.* (citing *Goldberger v. State Board of Accountancy,* 833 A.2d 815, 817 n.1 (Pa.Cmwlth. 2003) (quoting *Slawek v. State Board of Medical Education and Licensure,* 586 A.2d 362, 365 (Pa. 1991)).

9

forth the bases for suspending or revoking a professional nursing license. Under this section, the Board may suspend or revoke a license, *inter alia,* for: being convicted of, pleading guilty or nolo contendere, to a crime of moral turpitude; or "willfully or repeatedly violat[ing] any of the provisions of [the Practical Nurse Law] or of the regulations of the board." 63 P.S. §666(a)(3), (5).

First, Freeman argues that the Board relied on unsubstantiated facts in its decision to increase the severity of the sanction from that proposed by the Hearing Examiner. Specifically, she contends that the record is devoid of evidence to support the Board's description of the theft victim as an "elderly patient," a "vulnerable patient," and an "aged and infirm patient." Freeman Brief at 20-21. We reject this contention. The Board adopted the Hearing Examiner's findings of fact, which stated: (1) Freeman's theft conviction was as a result of taking "checking account information from *a patient at Majestic Oaks*" and (2) as a condition of her sentence, Freeman was "not to be employed taking care of *senior citizens*." Proposed Adjudication, 11/19/2015, at 5; Freeman Brief at P39 (emphasis added). *See also* R.R. 145 (Bucks County Criminal Court Sentencing Sheet). At the hearing, Freeman testified that she was working at a "nursing home" when she used a patient's checking account to pay her utility bills. N.T., 7/2/2015, at 55; R.R. 78. The Board did not err by inferring that individuals who live in nursing homes are "vulnerable" because of their age or illness.

Freeman challenges the Board's sanction because it cited crimes for which she was not convicted and facts not in the record.[11] The record showed that

---

[11] Freeman cites *Yi v. State Board of Veterinary Medicine*, 960 A.2d 864, 870 (Pa. Cmwlth. 2008), for the proposition that licensing board members cannot use the allegations in an affidavit of probable cause to find facts or make conclusions of law. In *Yi*, this Court explained that, "[a]dministrative expertise can be used to resolve conflicts in the testimony and to draw **(Footnote continued on the next page . . .)**

10

Freeman pled guilty to one count of conspiracy to commit theft at Home Depot and one count of theft for stealing financial information from a nursing home resident. She was not convicted of stealing the resident's jewelry; that criminal charge was *nolle prossed*. The Commonwealth responds that it matters only that Freeman was convicted of theft.[12] Whether it was theft of jewelry and banking account information, or just banking account information, is irrelevant. The Board argues that its reference to a conviction of theft of jewelry was harmless error. We disagree.

In making its decision to increase the penalty, the Board stated that "[Freeman] was *convicted* of theft for *stealing jewelry* and using the bank account of an elderly patient to pay her personal bills." Board Adjudication, 7/26/2016, at 1; Freeman Brief at P29 (emphasis added). This fact is not supported by the record. The charge related to theft of jewelry was *nolle prossed*, and there is a

---

**(continued . . .)**
reasonable inferences from the facts of record." *Id.* at 872. However, "an agency cannot use the specialized knowledge of its administrators as a substitute for evidence." *Id.* *Yi* is inapposite here. Freeman's arrest report, affidavit of probable cause, and criminal information were admitted into evidence, without objection. In any event, the issue in this case is not the information in those records but, rather, the Board's interpretation of and reliance upon that information.

[12] The Commonwealth also argues that Freeman waived this argument because she did not file exceptions to the Hearing Examiner's proposed findings of fact. She raises this issue for the first time on appeal. Proceedings before the Board are governed by the General Rules of Administrative Practice and Procedure (GRAPP), 1 Pa. Code §§31.1–35.251. *See* 49 Pa. Code §21.146. Following the issuance of the Hearing Examiner's proposed report, the parties may file exceptions. If a party does not file exceptions, under Section 35.213 of GRAPP, all objections to the proposed report are waived. 1 Pa. Code §35.213 (emphasis added).

The Commonwealth, however, misunderstands Freeman's challenge. Contrary to the Commonwealth's contention, Freeman is not challenging the Hearing Examiner's findings of fact and conclusions of law but, rather, the Board's stated reasons for increasing the severity of the sanction.

difference between a criminal charge and a criminal conviction. Freeman asserts this requires a reversal of the Board's sanction. The Board responds that the record supports this disputed statement and directs this Court to the Hearing Examiner's finding of fact that "[t]he charge of Theft by False Impression was the result of [Freeman's] theft of property including jewelry and checking account information…." Proposed Adjudication, 11/19/2015, at 5; Freeman Brief at P39.

A charge is an accusation or allegation that a person committed an offense. By contrast, a conviction is a finding by a court that a person is guilty of a criminal offense. In short, the finding of fact cited by the Board does not support its assertion that Freeman was "convicted" of "stealing jewelry."[13]

The Board argues that the reference in its adjudication to Freeman's conviction for "stealing jewelry" was harmless error. The Commonwealth cites no statute, regulation, or case law to support this proposition. An error is harmless if the agency does not base findings of fact or conclusions of law on that error. *See Shapiro v. State Board of Accountancy*, 856 A.2d 864, 875 (Pa. Cmwlth. 2004) ("receipt of the Offer of Settlement was harmless error, because no findings of fact or conclusions of law were based on it."). Here, we do not know the extent to which the Board's decision to increase Freeman's sanction was influenced by its stated and erroneous belief that her criminal conviction included stealing jewelry.

---

[13] The Hearing Examiner found that "[o]n April 23, 2014, the Warminster Township Police Department filed a Criminal Complaint charging [Freeman] with, *inter alia¸* use of the bank account number of a patient to pay for [Freeman's] electric and phone bills." Proposed Adjudication, 11/19/2015, at 3; Freeman Brief at P37. The Hearing Examiner also found that "[o]n October 20, 2014, [Freeman] entered a plea of guilty in the Court of Common Pleas of Bucks County at Docket Number CP-09-CR-0003788-2014 to one (1) count of violating 18 Pa. C.S.[] §3922(a)(1), Theft by Deception – False Impression, a Misdemeanor of the First Degree." *Id.* at 4; Freeman Brief at P38. There is nothing in these findings to support the Board's statement that Freeman was *convicted* of stealing jewelry.

Accordingly, we will vacate the Board's sanction and remand this matter to the Board to impose a sanction consistent with findings of fact and conclusions of law that are supported by the record.[14]

For the reasons stated above, we vacate the Board's order and remand the matter for further proceedings consistent with this opinion.

_____
MARY HANNAH LEAVITT, President Judge

---

[14] Freeman also argues that the Board erred in failing to consider her mitigation evidence, including the testimony of her character witnesses and the amount of time that has passed since she committed the criminal offenses. We decline to address this issue since we have determined to vacate the Board's order and remand for reimposition of a sanction.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mardea Freeman, LPN,                  :
               Petitioner        :
                                  :
            v.                  :   No. 1341 C.D. 2016
                                  :
Bureau of Professional and          :
Occupational Affairs,                :
State Board of Nursing,              :
               Respondent        :

## **O R D E R**

AND NOW, this 20th day of April, 2017, the order of the Bureau of Professional and Occupational Affairs, State Board of Nursing, in the above-captioned matter, dated July 26, 2016, is VACATED and the matter is REMANDED to the Board for further proceedings consistent with the attached opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge