# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Aasim Sehbai, M.D.,                          :
                   Petitioner    :
                                  :
             v.                    :
                                  :
Bureau of Professional and                   :
Occupational Affairs, State Board            :
of Medicine,                                 :  No. 1743 C.D. 2016
              Respondent    :  Submitted: March 3, 2017


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE JOSEPH M. COSGROVE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                            FILED: September 27, 2017

        Aasim Sehbai, M.D. (Dr. Sehbai) petitions this Court for review of the Commonwealth of Pennsylvania, Bureau of Professional and Occupational Affairs, State Board of Medicine's (Board) September 21, 2016 Order Affirming Final Adjudication and Order (Order) denying his Pennsylvania license application (Application). Essentially, the issue before this Court is whether the Board abused its discretion by denying the Application.[1] Upon review, we affirm.

---

[1] In Dr. Sehbai's Statement of Questions Involved, he presented three issues: (1) whether the Board erred by denying Dr. Sehbai's application; (2) whether the Board denied Dr. Sehbai due process by failing to give him notice and an opportunity to address the reasons for the denial; and, (3) whether the Board denied Dr. Sehbai due process because the denial will operate as a *de facto* interference with his rights in other jurisdictions. However, in his brief, Dr. Sehbai only developed and argued the first issue. In fact, Dr. Sehbai's only reference to due process outside the Statement of Questions Involved is the statement in his Summary of the Argument that "[t]he Board's determination flies in the face of due process." Dr. Sehbai's Br. at 23. The Pennsylvania Supreme Court has held:

Dr. Sehbai is a medical doctor, board-certified in oncology, hematology and internal medicine, who is licensed to and has practiced medicine in numerous states, including Delaware. Dr. Sehbai applied to the Board for licensure to practice medicine and surgery in Pennsylvania. On or about March 19, 2015, the Board issued a provisional denial. *See* Reproduced Record (R.R.) at 1a. Dr. Sehbai appealed from the provisional denial to the Board, which held a hearing before a hearing examiner on September 17, 2015. *See* R.R. at 3a-149a. On January 13, 2016, the hearing examiner issued a Proposed Adjudication and Order recommending that the Board grant Dr. Sehbai's Application. *See* R.R. at 150a-171a.

On February 3, 2016, the Board issued a Notice of Intent to Review Proposed Report of Hearing Examiner (NIR). *See* R.R. at 172a-173a. On June 9, 2016, the Board issued a Final Adjudication and Order denying Dr. Sehbai's Application and prohibiting him from re-applying for two years. *See* R.R. at 174a-194a. On July 20, 2016, Dr. Sehbai filed an Appeal for Rehearing and Reconsideration. *See* R.R. at 195a-201a. The Board granted reconsideration, but ultimately denied rehearing on August 4, 2016.[2] *See* R.R. at 202a-209a. On

---

> [O]ur rules of appellate procedure are explicit that the argument contained within a brief must contain 'such discussion and citation of authorities as are deemed pertinent.' [Pennsylvania Rule of Appellate Procedure (]Pa.R.A.P.[)] 2119(a). '[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of [an appellate court . . . ] to formulate [a]ppellant's arguments for him.' *Commonwealth v. Johnson*, . . . 985 A.2d 915, 924 ([Pa.] 2009) (internal citations omitted).

*Wirth v. Commonwealth*, 95 A.3d 822, 837 (Pa. 2014). Because Dr. Sehbai failed to argue his second and third issues in his brief, they are waived. Accordingly, we will address only Dr. Sehbai's first issue.

[2] Although Dr. Sehbai's reconsideration request was late-filed, since it appeared that the delay was due to problems with the United States mail, the Board granted the request for reconsideration *nunc pro tunc*.

September 21, 2016, the Board issued the Order. *See* R.R. at 210a-215a. Dr. Sehbai appealed to this Court.[3]

Dr. Sehbai argues that the Board abused its discretion by denying his Application. Specifically, Dr. Sehbai claims that he "demonstrated with credible evidence and testimony that he is of good moral character and is qualified for licensure in Pennsylvania. The [h]earing [e]xaminer so found. The Board, who did not observe Dr. Sehbai, abused its discretion when it failed to fairly review the evidence of record." Dr. Sehbai's Br. at 23. Accordingly, Dr. Sehbai contends that the Board "revers[ed] the [h]earing [e]xaminer's credibility determinations without cause, . . . and [] fail[ed] to address the only material evidence of record."[4] Dr. Sehbai's Br. at 24. We disagree.

> The Board is the agency charged with the responsibility and authority to oversee the medical profession and to determine the competency and fitness of an applicant to practice medicine within the Commonwealth. The state has the right to regulate and license professionals to protect the public health; and an applicant for licensure bears the burden of proving that he or she meets the qualifications for obtaining a license to practice a profession or occupation.

---

[3] "The scope of review of the Board's order is limited to determining whether constitutional rights were violated, [whether] an error of law was committed or whether necessary findings of fact are supported by substantial evidence." *Barran v. State Bd. of Med.*, 670 A.2d 765, 767 n.3 (Pa. Cmwlth. 1996).

[4] Dr. Sehbai also argues in his brief that the Board erred by "relying on its own specialized knowledge to substitute evidence of record[.]" Dr. Sehbai's Br. at 24; *see also* Dr. Sehbai's Br. 22, 37-42. Dr. Sehbai did not raise that issue in his petition for review. Until Pa.R.A.P. 1513 was amended in 2014, issues not raised in the petition for review would not be addressed on appeal. *See Mostatab v. State Bd. of Dentistry*, 881 A.2d 1271, 1273 (Pa. Cmwlth. 2005). Since the 2014 amendment, issues not raised in the petition for review are waived *unless* "the court is able to address the issue based on the certified record[.]" Pa.R.A.P. 1513(d)(5). The Official Note to Pa.R.A.P. 1513(d) clarifies that Pa.R.A.P. 1513(d)'s 2014 amendments "are intended to preclude a finding of waiver if . . . an issue [is] not . . . in the petition for review **but included in the statement of questions involved *and* argued in a brief.**" Official Note (2014) (emphasis added). Since Dr. Sehbai did not raise the specialized knowledge issue in his statement of questions involved, it is waived, and this Court will not address it.

3

Furthermore, an individual has no vested right to practice medicine within the Commonwealth.

*Barran v. State Bd. of Med.*, 670 A.2d 765, 767-68 (Pa. Cmwlth. 1996) (citations omitted).

The Board provisionally denied Dr. Sehbai's Application on March 19, 2015 for the following reasons:

> Sections 22 and 41 of the Medical Practice Act of 1985 (Act),[5] 63 P.S. §§ 422.22 and 422.41, **authorize the Board to refuse to issue a license** when an applicant has failed to demonstrate the qualifications or standards for a license, including good moral character and **when an applicant** has had a license to practice medicine revoked, suspended or **has had other disciplinary action taken by the proper licensing authority of another state**, territory, possession or country. [*See*] [S]ections 22(b) and 41(4) [of the Act], 63 P.S. §§ 422.22(b) and 422.41(4). Your application documents indicate that you had disciplinary action taken against your medical license by the Delaware [Board of] [M]edical [Licensure and Discipline (Delaware B]oard[)], based on you having written a letter of recommendation for a medical student stating that the student did a clinical rotation with you when the student had not done so. You signed a consent agreement admitting this misconduct on May 21, 2014 [(May 2014 Consent Agreement)], and the Delaware [B]oard reprimanded you, fined you $2[,]000 and ordered you to take [continuing medical education (]CME[)][6] in ethics. The DataBank report indicates that you wrote fraudulent letters for two physicians; however, you only mailed one of the letters. This misconduct raises questions about your moral character; in addition, the Board is authorized to refuse your license application because you were disciplined in Delaware.

R.R. at 1a (emphasis added). The denial notice informed Dr. Sehbai that he could appeal and have a hearing at which he "will have the burden of proving that [he]

---

[5] Act of December 20, 1985, P.L. 457, *as amended*, 63 P.S. §§ 422.1-422.51a.

[6] CME is not defined in the record; however, it would appear to stand for continuing medical education.

4

possess[es] the qualifications for licensure and fitness to practice." R.R. at 2a. With his April 23, 2015 appeal letter, Dr. Sehbai reported that he entered into a second consent agreement related to additional discipline imposed by the Delaware Board (March 2015 Consent Agreement). *See* R.R. at 41a-45a.

Section 16.53 of the Board's Regulations, 49 Pa. Code § 16.53, authorized the Board to appoint a hearing examiner to conduct hearings pursuant to the Administrative Agency Law[7] and the General Rules of Administrative Practice and Procedure (GRAPP).[8] On May 6, 2015, the Board issued an order delegating the case to the hearing examiner pursuant to Section 16.53 of the Board's Regulations to conduct the hearing and to issue a proposed adjudication and order which the Board would thereafter review. *See* Certified Record (C.R.) at 2. The Board's hearing notices specified that the hearing would be conducted in accordance with GRAPP. *See* C.R. at 3, 7.

Among other evidence admitted at the hearing were the May 2014 and March 2015 Consent Agreements. The May 2014 Consent Agreement, related to Dr. Sehbai's reprimand for violating Delaware law prohibiting unprofessional and/or deceptive conduct, because he wrote medical residency recommendation letters in 2012 for two foreign medical students, wherein he represented that the students had done clinical rotations with him when they had not.[9] *See* R.R. at 91a-96a. Dr. Sehbai expounded that he was trying to help the students, that only one letter was issued but not ultimately used, and that he did not "show the letter to everybody." *See* R.R. at 33a; *see also* R.R. at 12a, 42a. Dr. Sehbai acknowledged the offenses, testified that

---

[7] 2 Pa.C.S. §§ 501-508, 701-704.

[8] 1 Pa. Code §§ 31.1-35.251.

[9] The medical students were scheduled to do clinical rotations with Dr. Sehbai, but had not yet done so as of the time Dr. Sehbai wrote the letters. *See* R.R. at 12a, 33a.

5

he served his punishment, and declared that the Delaware Board issued him an unrestricted license to practice thereafter.[10] *See* R.R. at 13a, 25a.

The March 2015 Consent Agreement[11] was issued relative to a May 1, 2014 incident during which Dr. Sehbai violated hospital policy by giving a cancer patient (Patient) another patient's oral chemotherapy medication in an unlabeled container. *See* R.R. at 71a-78a. The March 2015 Consent Agreement further reflected that Dr. Sehbai wrote a letter in defense of his conduct, had Patient sign it, and then submitted it to the hospital's administration. *See* R.R. at 73a. Under the March 2015 Consent Agreement, Dr. Sehbai was required to take 10 CME hours above those required for licensing, pay a $1,000.00 fine, and provide quarterly reports to the Delaware Board regarding his employment and disciplinary status for two years. *See* R.R. at 75a-76a. At the Board's hearing, Dr. Sehbai explained that Patient had rapidly-progressing cancer, and he was attempting to help her by supplying her with chemotherapy medication samples until her insurance company would approve it. He explained that Patient never took the medications,[12] and that his actions did not compromise Patient's care. *See* R.R. at 13a-15a, 25a-27a. He declared: "Maybe it was wrong and I will not do it again." R.R. at 28a.

Dr. Sehbai testified that he left the Delaware hospital in July 2014 due to unnecessary pressures placed on the physicians after the hospital settled a historic lawsuit. *See* R.R. at 14a, 17a-18a. He worked in Saudia Arabia for one month. *See* R.R. at 18a. He described that he was currently working a six-month assignment in a North Carolina clinic, he was awaiting a full-time job offer, and he intended to stay there. *See* R.R. at 19a, 24a. Dr. Sehbai disclosed that he appealed from the Board's

---

[10] He was licensed in Delaware from 2007 through 2017. *See* R.R. at 20a.

[11] Dr. Sehbai signed this Consent Agreement on March 19, 2015, the same day the Board's provisional denial was issued.

[12] According to Dr. Sehbai, the incident was reported by a nurse that day, and he contacted Patient who returned the unused medication the next day. *See* R.R. at 14a-15a.

6

denial because he holds active, unrestricted licenses in seven states that were aware of these incidents when they licensed him.[13] *See* R.R. at 15a-16a. Dr. Sehbai stated that he originally applied here because he had Pennsylvania job offers, one of which was ultimately offered to another candidate because of the delay. *See* R.R. at 24a, 35a. He asserted, however: "I don't think I want a license in Pennsylvania. But I also don't want a denial, which would set another wave of it go[ing] to every board . . . -- it's like a vicious cycle." R.R. at 24a; *see also* R.R. at 34a. He maintained that he would have withdrawn the Application, but claims he was told that since he already submitted it, his only options were to accept the denial or appeal from the denial. *See* R.R. at 25a, 38a.

According to Dr. Sehbai, his life was turned upside-down by these complaints, but he has since received counseling from his wife, parents and siblings about understanding boundaries. *See* R.R. at 32a-33a. He contends that he is "a very good, compassionate doctor," he has completed his CME requirements, and he has paid his fines. R.R. at 33a; *see also* R.R. at 28a, 30a-31a. Dr. Sehbai expressed:

> I just want to say I really think I made some mistakes in my life. I apologize. Part of it was the hospital politics too, which applied to those complaints to the [Delaware B]oard.
>
> But I think I have learned my lessons. I just want to practice good medicine. And I don't think I have committed acts of such nature that I should be denied license in Pennsylvania.

---

[13] According to the record, Dr. Sehbai was licensed in Delaware, Alabama, Maryland, North Carolina, South Carolina and Virginia, and applications in Arkansas, Ohio, Pennsylvania and New York are pending based on his Delaware disciplinary actions. *See* R.R. at 13a, 15a, 18a-21a, 157a. As of the time of the hearing, only Pennsylvania had denied his Application. *See* R.R. at 22a. He let his West Virginia license lapse after completing his residency and fellowships there. *See* R.R. at 16a-17a, 21a.

R.R. at 35a-36a. In addition to the Consent Agreements, the hearing examiner admitted into the record documents in support of Dr. Sehbai's Application, including his resume, his medical license history and character reference letters.

Based upon the evidence presented, the hearing examiner concluded that "the record supports [Dr. Sehbai's] statement that he has learned his lesson and just wants to practice good medicine. Accordingly, the hearing examiner recommends that an unrestricted license should be issued to [Dr. Sehbai.]" R.R. at 168a. The hearing examiner explained:

> [A]cts which reflect poorly on an individual's moral character maybe countered by evidence indicating that, while the individual failed to display the requisite moral character in those specific instances, the individual is not generally of bad moral character. In this case, there is just such evidence. For example, [Dr. Sehbai] demonstrated credible remorse at the hearing. He apologized and acknowledged his wrongdoing and the dishonesty he exhibited in both instances that led to the Delaware disciplinary actions. Moreover, his actions led to serious consequences for him, in that he ended up separating from his employment, was unemployed for a year, and faced disciplinary action. He testified credibly that he has learned his lesson from all of this.

> Additionally, [Dr. Sehbai] reported the Delaware disciplinary actions to each of the states where he subsequently applied for a license, including the Commonwealth. An individual who truly possessed bad moral character would not have openly disclosed those things but would have tried to hide them. And despite [Dr. Sehbai's] disclosure of his disciplinary history, several of the states where he applied nonetheless issued him unrestricted licenses . . . . When a sister state confers an occupational or professional license on an individual, 'it represents the opinion of the [s]tate that the license holder has met the enumerated qualifications for that license in terms of education, experience, honesty, and integrity.' *Khan v. State B[d.] of Auctioneer Exam[']rs*, 842 A.2d 936, 944 (Pa. 2004). That these seven states have found [Dr. Sehbai] to possess the requisite qualifications for

8

unrestricted licensure, therefore, serves as a factor in favor of [Dr. Sehbai's] good moral character.

Also, [Dr. Sehbai's] actions in providing Patient with the medication returned to him by another patient were wrong, and he recognizes that, but [Dr. Sehbai's] error was one of compassion. He was trying to ease the impact of a disturbing diagnosis by speeding Patient's access to treatment, rather than from any bad motive. And despite all of his errors, the members of the Beebe hospital administration who reported the incident with Patient to the Delaware Board noted that [Dr. Sehbai] 'acted selflessly[,] putting his patients' [sic] welfare before his own when dispensing medication acquired from another patient' and referenced [Dr. Sehbai's] 'reputation for going above and beyond ordinary measures to afford his patients the best possible care,' thereby vouching for [Dr. Sehbai's] good reputation among his colleagues. Indeed, [Dr. Sehbai] testified, consistent with these statements from the hospital administrators, that he has a good reputation as a physician in the community served by Beebe. Furthermore, [Dr. Sehbai] has a clean disciplinary history aside from the events in Delaware, and nowhere is there any evidence that he has ever committed any actions resulting in patient harm or compromising his medical competence. All of these things weigh in [Dr. Sehbai's] favor.

Finally, [Dr. Sehbai] testified that in the aftermath of his actions and the Delaware disciplinary action, he received a lot of counseling, from his wife, parents and siblings, making it clear to him that, although his job is to take care of patients, he needs to understand the boundaries of patient care and follow the rules. He testified that he will never again take actions like those that ended with his being disciplined in Delaware. His testimony to that effect was credible.

R.R. at 166a-168a.

The hearing examiner's January 13, 2016 proposed order also reflected that the Board "has announced its intention to review th[e] Proposed [Adjudication and Order] in accordance with [Section 35.226(a)(2) of the Board's Regulations (relating to final orders),] 1 Pa. Code § 35.226(a)(2)." R.R. at 169a. The notice that

9

accompanied the Proposed Adjudication and Order further warned that the Board "may substitute its findings for those of the [h]earing [e]xaminer, and/or may impose a greater or lesser sanction. . . ." R.R. at 171a. Finally, the February 3, 2016 NIR informed Dr. Sehbai that, upon its review,

> [t]he Board may substitute its findings for those of the hearing examiner, and/or may impose a greater or lesser sanction than that imposed by the hearing examiner, without regard to the relief requested or the position argued by any party. If a sanction will be imposed, it will be determined in accordance with the [Act]. The Board reserves the authority to hear argument and/or additional evidence if it deems doing so is advisable.

R.R. at 172a.

The Board did, in fact, reach a different result on the same evidence and denied the Application based on the following reasoning:

> The evidence from the hearing clearly indicates that the Delaware Board has disciplined [Dr. Sehbai]. Based upon a long line of case law in the Commonwealth, the Board may deny [Dr. Sehbai] a license *solely* on the fact of that other state's discipline. *See Barran* . . . , 670 A.2d [at] 769 . . . . The question, then, is whether the Board *should* do so. In considering that question, it is helpful to examine the facts underlying the Delaware Board's actions in order to determine if there is any mitigation which takes [Dr. Sehbai's] actions out of the realm of bad moral character and warrants the grant of his [A]pplication despite those notions and the concomitant disciplinary measures meted out by the Delaware Board.
>
> [Dr. Sehbai] admitted in the [May 2014] Consent Agreement that he wrote two fraudulent letters for two medical students who were seeking graduate medical training at Beebe [Medical Center in Delaware (Beebe)]. One of those letters was used but the other was never mailed. [Dr. Sehbai] admitted in the [March 2015] Consent Agreement that, in order to defend his actions in providing another patient's medications to Patient, [Dr. Sehbai] drafted a letter for Patient to sign, secured her signature, and

10

then passed the letter off to the hospital administration as Patient's own. During the hearing, [Dr. Sehbai] admitted that he was dishonest, made mistakes, and engaged in misconduct in committing these actions.

These facts reflect poorly on [Dr. Sehbai's] moral character. 'Good moral character' is defined, in part, as follows:

> 1. A pattern of behavior that is consistent with the community's current ethical standards and that shows an absence of deceit or morally reprehensible conduct . . . [.] 2: A pattern of behavior conforming to a profession's ethical standards and showing an absence of moral turpitude . . . [.] Good moral character is [usually] a requirement of persons applying to practice a profession such as law or medicine . . . [.]

BLACK'S LAW DICTIONARY 714 (8th ed. 2004). Case law provides an additional understanding of those terms in the specific context of licenses and similar interests. In *Gombach v. Department of State, Bureau of Commissions, Elections and Legislation*, 692 A.2d 1127 (Pa. Cmwlth. 1997), the [C]ourt defined the analogous 'good moral character' requirement in [S]ection 5 of the Notary Public Law[14] to require the absence of conduct or acts indicating moral turpitude, stating, our [C]ourts have defined moral turpitude as 'anything done knowingly contrary to justice, honesty or good morals,' *Gombach*[, 692 A.2d] at 1130 (quoting *Foote v. State Bd. of Vehicle Mfrs., Dealers and Salespersons*, 578 A.2d 1355, 1357 (Pa. Cmwlth. 1990)). *See also Bowalick v. Commonwealth*, 840 A.2d 519 (Pa. Cmwlth. 2004) (an act [of] moral turpitude may consist of intentional, knowing or reckless conduct involving dishonesty, fraud or deception). Therefore, under *Gombach* and these similar cases, good moral character is demonstrated by the absence of conduct or acts done knowingly contrary to justice, honesty or good morals.

By engaging in the acts of dishonesty which were at the heart of the [May 2014 and March 2015] Consent

---

[14] Act of August 21, 1953, P.L. 1323, *as amended,* 57 P.S. § 151. Section 5 of the Notary Public Law was repealed by Section 3(2)(ix) of the Act of October 9, 2013, P.L. 609, effective October 26, 2017.

11

Agreements in Delaware, [Dr. Sehbai] did things knowingly which were contrary to honesty. Clearly, then, the acts underlying those Consent Agreements were acts of moral turpitude, and demonstrate that, in those instances, [Dr. Sehbai] failed to display the good moral character expected of the Commonwealth's licensees. [Dr. Sehbai's] professional integrity is in question because [Dr. Sehbai] had never worked with the students and he had no basis from which to recommend the students for graduate medical training. [Dr. Sehbai's] medical decision[-]making is also in question because he engaged in unlawful conduct.

These [i]nstances of misconduct are particularly troubling to the Board because of their timing. The hearing examiner found that [Dr. Sehbai] demonstrated credible remorse at the hearing, apologized and acknowledged his wrongdoing and the dishonesty he exhibited in both instances that led to the Delaware disciplinary actions. Although [Dr. Sehbai's] actions in 2012 related to making false recommendations for students led to serious consequences for him, in that he ended up separating from his employment, was unemployed for a year, and faced disciplinary action, he nevertheless subsequently engaged in more serious misconduct in 2014. The 2014 misconduct is more egregious than the 2012 conduct because, whereas the 2012 misconduct was arguably committed for the benefit of the students who were seeking admission to a residency program, [Dr. Sehbai] wrote the letter and misrepresented it as a letter from Patient solely for his own benefit, [Dr. Sehbai's] immoral conduct is escalating rather than diminishing.

Although the hearing examiner found that [Dr. Sehbai] testified credibly that he has learned his lesson, a review of the transcript indicates that it is not clear that [Dr. Sehbai] has 'learned his lesson.' Regarding the letters of recommendation, [Dr. Sehbai] testified that his conduct 'was not committing a fraud.' Regarding the provision of one patient's unsealed, unlabeled medication to [Patient], [Dr. Sehbai] testified that he believes that Beebe used the incident to 'get rid of some of the oncologists for some motives' that were not related to patient safety concerns, but rather, were related to how much Beebe paid some oncologists, including [Dr. Sehbai]. [Dr. Sehbai] additionally testified as follows: 'Maybe it was wrong and I will not do it again.' (N.T. 25, emphasis added[.]) [Dr.

Sehbai] does not appear to appreciate the seriousness of his misconduct either with the students or with Patient. Moreover, [Dr. Sehbai] does not appear to realize that his conduct with [P]atient was unlawful.

[Dr. Sehbai] possesses licenses in other states and is currently practicing in North Carolina, where he had been in practice for only two months at the time of the hearing. The hearing examiner appears to have given significant weight to the findings of other state boards; however, on the record before the Board, the Board cannot agree with those decisions, [Dr. Sehbai] bears the burden of demonstrating, by a preponderance of the evidence, that he possesses the good moral character requisite to licensure and that his application should be granted notwithstanding the fact that he was disciplined by the Delaware [B]oard in 2012 and 2014. The totality of the evidence weighs in favor of denying [Dr. Sehbai's A]pplication at this time.

Should [Dr. Sehbai] desire licensure in Pennsylvania at a later date, he can reapply. The intervening period of time will give [Dr. Sehbai] an opportunity to demonstrate that he can successfully engage in medical practice without committing addition [sic] acts of dishonesty, fraud, or unlawful conduct.

Dr. Sehbai's Br. Ex. B (Board's Final Adjudication and Order) at 14-17.

The law is clear that

[a]s the ultimate factfinder, the Board may accept or reject the testimony of any witness in whole or in part, and **this Court is bound by the credibility determinations made by the Board**. When reviewing a decision by the Board, **this Court may not reweigh the evidence presented or judge the credibility of witnesses**.

*Barran*, 670 A.2d at 768 (citation omitted; emphasis added). Moreover, this Court has declared:

T**he ultimate decision on what, if any, action to take lies with the Board**; **the Board** may hold an additional hearing, **may make new findings of fact, may alter the sanctions recommended, may reject the proposed report in its entirety**, or may adopt the [h]earing [e]xaminer's proposed report and order without alteration.[FN]11

13

> While a fact finder's observation of the demeanor of a witness has traditionally been viewed as an important factor in determining credibility, administrative adjudicators are permitted to determine the credibility of testimony from the reading of a transcript. Administrative agencies often use a system of adjudication where a hearing examiner or presiding officer takes evidence and the ultimate fact finder is a board or commission, which **has the power to make findings of fact based solely on a review of the record**. *See, e.g., Kramer v. Dep[']t of Ins[.],* 654 A.2d 203 (Pa. Cmwlth. 1995) (presiding officer conducted an evidentiary hearing, but the adjudication was issued by the Insurance Commissioner)[.] An adjudicative method where the ultimate decision in a case is made by an administrative fact finder who did not hear the testimony does not deny a litigant due process of law.

> *A.O.,* 838 A.2d at 38 n.5 (internal citations omitted); *see also McDermond v. Foster,* . . . 561 A.2d 70, 72 ([Pa. Cmwlth.] 1989).

*Hammad v. Bureau of Prof'l & Occupational Affairs, State Bd. of Veterinary Med.*, 124 A.3d 374, 381 (Pa. Cmwlth. 2015) (emphasis added).

In the instant case, it is clear that the Board thoroughly reviewed the evidence and specified why its decision differed from the hearing examiner's recommendation. The Board was authorized to and did make its own credibility determination, which this Court may not disturb. Under the circumstances, the Board did not "revers[e] the [h]earing [e]xaminer's credibility determinations without cause, . . . [or] fail[] to address the only material evidence of record." Dr. Sehbai's Br. at

14

24.[15]  Accordingly, we hold that the Board did not abuse its discretion by denying Dr. Sehbai's Application.

Based on the foregoing, the Board's Order is affirmed.

_____
ANNE E. COVEY, Judge

---

[15] Although the Board's decision was clearly supported by the record, we caution the Board against the use of heavy-handed language for which it lacks record and/or legal support.  In particular, the Board here declared that Dr. Sehbai violated federal law by transferring another's medications to Patient, *see* Board's Final Adjudication and Order at 13, but then acknowledged in its brief on appeal to this Court that such statement was merely an "incorrect representation" which this Court should now consider de minimis.  Board Br. at 21-22.  When an individual's livelihood is at stake, the Board must be precise in its consideration.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Aasim Sehbai, M.D., : 
               Petitioner : 
                      : 
              v. : 
                      : 
Bureau of Professional and : 
Occupational Affairs, State Board : 
of Medicine, :     No. 1743 C.D. 2016
              Respondent : 

## O R D E R

AND NOW, this 27th day of September, 2017, the Commonwealth of Pennsylvania, Bureau of Professional and Occupational Affairs, State Board of Medicine's September 21, 2016 Order Affirming Final Adjudication and Order is affirmed.

_____
ANNE E. COVEY, Judge

Aasim Sehbai, M.D., : 
               Petitioner : 
                : 
        v. : 
                : 
Bureau of Professional and : 
Occupational Affairs, State : 
Board of Medicine , :   No. 1743 C.D. 2016
             Respondent :   Submitted: March 3, 2017


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE JOSEPH M. COSGROVE, Judge


OPINION NOT REPORTED

CONCURRING AND DISSENTING
OPINION BY JUDGE COSGROVE       FILED: September 27, 2017


      I join the Majority in part, particularly its final footnote and the warning to the Bureau of Professional and Occupational Affairs, State Board of Medicine (Board) against "use of heavy-handed language for which it lacks record and/or legal support…" (Majority, slip op. at 15, n. 14.) Since I find the Board's "heavy hand" permeates its decision denying Petitioner an unrestricted license to practice medicine, I cannot agree with the Majority in its affirmance. As such, I must dissent.

      Aasim Sehbai's (Petitioner) offending conduct arises from incidents which occurred in the State of Delaware and "led to serious consequences for him." (Reproduced Record (R.R.) 166a; Majority, slip op. at 8.) Enduring these consequences and paying the serious price for his errors, Petitioner has now been

found "to possess the requisite qualifications for unrestricted licensure" in seven states, including Delaware, with Pennsylvania (through the Board's action at issue herein) being the only state to deny him. (R.R. at 167a; Majority, slip op. at 8-9.) And this denial comes despite the hearing examiner's recommendation to the contrary. In rejecting this recommendation, the Board, in part, employed the language with which the Majority's footnote 14, *supra*, takes issue. But where the Majority lets the Board off with a warning, I cannot.

The present record is replete with mitigating reasons to support the hearing examiner. Aside from the fact that Delaware, the initial prosecuting state, is satisfied (as are the other licensing states) that Petitioner's offenses have been remediated, the hearing examiner noted how the hospital administrators who launched one of the complaints against Petitioner explained that Petitioner nonetheless "acted selflessly[,] putting his patients' welfare before his own," and that he had a "reputation for going above and beyond ordinary measures to afford his patients the best possible care…" (R.R. at 167a; Majority, slip op. at 9.) From those who worked with him, the evidence is quite clear that Petitioner is precisely the kind of doctor one would covet.

Against this backdrop is not only the Board's rejection of the hearing examiner's recommendation, but the insertion of erroneous information and analysis within that rejection. As the Majority's footnote 14 explains, in its Final Adjudication and Order, the Board addressed the issue of Petitioner having provided medication to one patient which was meant for another. The Board stated that "dispensing unsealed and unlabeled chemotherapeutic drugs to one Patient when they belong to another patient violates Federal law and is inconsistent with the quality standards of the profession." (R.R. at 188a.) In its brief to this Court,

however, the Board acknowledges that this statement is incorrect. (Board's Brief at 21-22.) However, in so doing, the Board dismisses the seriousness of its error and argues that it should be considered nothing more than *de minimis*. *Id.* at 22. The Board has rejected the detailed recommendation of its hearing examiner, has ruled contrary to its counterparts in seven states, and has done so when a serious portion of its assessment is contrary to law and fact. In this vein, and while I respect the Majority's analysis, I cannot embrace it. I would, at least, reverse and remand for further proceedings.

_____
JOSEPH M. COSGROVE, Judge